WALTER I. TURNER et al., Appellants, v. WILLIAM HUNTER.

Division One, January 4, 1910.*

1. **TAX SALE: In Mass: Subsequent Purchasers.** Where the judgment for taxes was valid, a recital in the sheriff's deed that his grantee was the highest and best bidder for the land and that it was sold to him, is no evidence, as against a subsequent purchaser of said grantee, without notice, that the land was not actually sold by the least legal subdivisions. [Following Shelton v. Franklin, 224 Mo. 342.]

2. ——: **Execution.** A recital in the tax deed that execution was issued and levied is *prima facie* true.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*Shepard & Shepard, S. J. Corbett* and *Duncan & Bragg* for appellants.

(1) Sheriffs in selling land under execution should divide the land, when susceptible of division, and sell only so much thereof as was necessary to pay the execution and costs, and while such failure on the part of the sheriff does not make a sale void, yet the sale will be set aside on timely motion to that effect, or on a direct proceeding in equity for that purpose. Yeamann v. Lepp, 167 Mo. 61; State ex rel. v.

*Note.—Decided December 23, 1909. Motion for rehearing filed. Motion overruled January 4, 1910.

Elliot, 114 Mo. App. 562; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. Hickman, 96 Mo. 350; Roser v. Georgia Loan & Trust Company, 118 Ga. 181; Starr v. Shepard, 108 N. W. 709; Stark v. Cummings, 56 S. E. 130; Williamson v. White, 28 S. E. (Ga.) 846; Jungk v. Snyder, 78 Pac. 168; French v. Edwards, 13 Wall. 506. (2) The tax deed on its face shows the imperfections in the title, and the subsequent grantee is certainly charged with all matters of record pertaining to the title through which he holds. Corrigan v. Schmidt, supra. (3) The court will understand that the plaintiffs do not claim that the tax sale under the holdings of Missouri, is absolutely void, for, if it were void, then a proceeding in equity would not be necessary, but a collateral proceeding would be sufficient. The contentions of plaintiffs are that the tax sale is voidable and will be set aside by a direct proceeding in equity at any time, unless there has been such a change in the standing of the parties as to estop the plaintiffs from having the sale set aside by reason of laches or other equitable grounds that may have arisen since the date of the sale. The evidence in this case shows that either forty acres of this tract would have sold for $10 an acre at the time it was sold for taxes, and that $10 per acre was the reasonable value of the land. Under such circumstances can anyone say that the plaintiffs in this case were not damaged by reason of the land's being sold in bulk instead of being divided and only enough thereof sold to pay the taxes, interest and costs. (4) Respondent no doubt will claim that the sheriff's deed is not evidence of the manner in which the land was sold, and therefore defendant is not chargeable with knowledge of the manner in which the land was sold at the sale by the sheriff. The law of Missouri is entirely different from that contention. Sec. 3210, R. S. 1899. It has ever been held by this court as well as by the courts of last resort of most of the states, that the recitals in sheriff's deeds were

evidence of the manner in which the land was sold, and if the land was divided and sold in parcels the deed should recite the necessary facts to show such subdivision and the amount each subdivision sold for. State ex rel. v. Richardson, 21 Mo. 420; Keene v. Barnes, 29 Mo. 384; Smith v. Williams Cooperage Co., 100 Mo. App. 153; Barnes v. Beardley, 3 L. R. A. 786; French v. Edwards, 13 Wall. 506; Martin v. Barber, 140 U. S. 634.

*Oliver & Oliver* and *John A. Hope* for respondent.

(1) Plaintiffs take the stand in this court that this case is a direct proceeding in equity to set aside the tax sale and cancel the sheriff's deed through which defendant derives his title. Having assumed this attitude, their case must fail. Their petition is a nullity as a bill in equity, under any form of procedure known to equity practice. Clark v. Covenant Life Ins. Co., 52 Mo. 278; Humphreys v. Atlantic Milling Co., 98 Mo. 542. (a) Where a plaintiff asserts in his petition that he is the owner of the legal title, and it further appears, as is disclosed by the record in this case, that the defendant is in actual possession of the real estate, equity is without jurisdiction to cancel an alleged cloud on the title. Clark v. Insurance Company, 52 Mo. 272; Keane v. Kyne, 66 Mo. 218; Thompson v. Newberry, 93 Mo. 25; Davis v. Sloan, 95 Mo. 552; Graves v. Ewert, 99 Mo. 18; McRae v. Gardner, 131 Mo. 606; Mason v. Black, 87 Mo. 346. (b) The allegations in the petition as to the feebleness of plaintiffs' father, and insanity of two of the plaintiffs, do not constitute any ground in law for annulling the tax deed, especially since the petition does not charge the purchaser or his vendee, Hunter, with notice of such facts. Herd v. Sack, 81 Mo. 616. (c) It is well settled that the failure of a petition to state a cause of action is a question that can be raised for the first time on appeal. McQuitty v. Wilhite, 218 Mo. 591. (2) 1. Sec. 3185,

R. S. 1899, which requires the officer levying an execution to divide the property, if susceptible of subdivision, and sell so much thereof as will be sufficient to satisfy such execution, clothes the officer with discretionary power; this is a power to be exercised by the sheriff, and it is for him to decide whether he should sell *en masse* or in subdivisions. Springer v. U. S., 26 L. Ed. (U. S.) 256; Olcutt v. Bynum, 21 L. Ed. (U. S.) 570. 2. Where there is a power and discretion, such as existed in the sheriff when he sold the land in question to Wilks, a court in equity will interpose only on the ground of bad faith or fraud. Jones v. Building Association, 77 Ind. 345; Springer v. U. S., supra; Olcutt v. Bynum, supra; Draper v. Bryson, 17 Mo. 71. 3. And it must be shown that the purchaser had notice of or participated in the irregularity and fraud; this must be made palpably clear. Draper v. Bryson supra; Jones v. Building Association, supra. 4. The statute (sec. 3185, supra) does not mean that a sale of a tract of 80 acres, or 160 acres, or 320 acres lying in a contiguous body would be irregular. Such a tract is in itself a subdivision of a section, which is the unit under our system of land surveys. The rule requiring the officer to subdivide land and sell it in parcels applies when he levies the execution on a number of tracts not contiguous, but when he levies on a subdivision of 160 acres lying in one body and sells it as one tract, without subdividing it into four 40-acre or eight 20-acre parcels, he does not violate the rule with respect to sales *en masse*. Martin v. Cole, 38 Iowa 145; Bulkey v. Callahan, 32 Iowa 465; Corbin v. DeWolf, 25 Iowa 128; Brien v. Shaughnessy, 3 Lea (Tenn.) 724. 5. But even if the statute were construed in accordance with plaintiffs' contention, that is to say, that the officer is required to divide and offer the land for sale in forty-acre pieces, it is merely directory, and failure to comply with the direction is a mere irregularity. Rector v. Hartt, 8 Mo. 448; Fine v. St.

Louis Public School, 30 Mo. 173; Bouldin v. Ewart, 63 Mo. 336; Hicks v. Perry, 7 Mo. 346; Wellshear v. Kelly, 69 Mo. 355; Hays v. Perkins, 109 Mo. 108; Lewis v. Whitten, 112 Mo. 328; Morrison v. Turnbaugh, 192 Mo. 444; Jones v. Building Association, 77 Ind. 343; Howard v. Stevenson, 11 Mo. App. 412; Brien v. Shaughnessy, 3 Lea (Tenn.) 24. 6. Being only an irregularity, the defect comes within the principle to be deduced from all the authorities, which principle is, "that the title of a purchaser not himself in fault cannot be impaired at law nor in equity by showing any mere error or irregularity in the proceedings." 3 Freeman on Executions (3 Ed.), sec. 339; Jackson v. Bartlett, 8 Johns. 361; Jackson v. Rosevelt, 13 Johns. 97; Boles v. Johnson, 23 Cal. 226; Eliott v. Knott, 14 Md. 121; Draper v. Bryson, supra; Howe v. Starkweather, 17 Mass. 240; May v. Thomas, 48 Me. 397. (a) The presumption is that, in selling the land, the sheriff did his duty, and sold the land in parcels if the statute so required, and having sold it to Wilks in subdivisions, conveyed it all to him in one deed. (b) This 160 acres was one contiguous body, but; even if it had consisted of two or more separate and distinct tracts not adjacent to each other, it could have been included in one tax deed, and such joinder would not necessarily have raised the presumption that the tracts were sold in gross. Towle v. Holt, 14 Neb. 227; 1 Cooley on Taxation (3 Ed.), pp. 447-951; Stieff v. Hardwell, 35 Fla. 609; Crimean v. Johnson, 23 Colo. 264.

WOODSON, J.—This suit was instituted in the circuit court of Pemiscot county by the plaintiffs, the heirs at law of Robert B. Turner, deceased, against the defendant, to set aside and have canceled a sheriff's deed, made to William Wilks, dated September 4, 1895, in pursuance to a sale had under a special execution issued on a judgment rendered for taxes due the State for the years 1890 and 1892. The court found the

issues for the defendant, and plaintiffs appealed the cause to this court.

Since counsel for respondent challenge the sufficiency of the allegations of the petition to state a cause of action against him, it becomes necessary to set out the petition in order to determine that question. It is in the following words and figures, to-wit:

"Plaintiffs state that they, except Martha A. Turner, are the legal heirs of Robert B. Turner, deceased; that plaintiff, Martha A. Turner, is the widow of the said Robt. B. Turner.

"Plaintiffs further state that the said Robt. B. Turner was seized and possessed of and had title in fee to the following described real estate, situate, lying and being in the county of Pemiscot, and State of Missouri, to-wit: Northeast quarter of section thirty-three, township eighteen, range thirteen; and had been so possessed of same for a number of years before his death; that R. B. Turner departed this life on the 9th day of September, 1895; that the said R. B. Turner had been in very feeble health for more than one year before his death, during which time he was wholly incapacitated, both mentally and physically, from attending any business whatever. That the land herein described, at the time of the death of the said R. B. Turner, was all wild, uncultivated timber lands, in the possession of no person or persons; that none of the plaintiffs herein were aware of the fact that the said R. B. Turner had ever owned this land until about one month prior to the bringing of this suit; that plaintiffs, John Turner and Jim Turner, were, at the time of the death of the said R. B. Turner, of unsound mind, and have been most all of the time up to the bringing of this suit; that plaintiff, Dolly Farmer, was a married woman at the time of the death of R. B. Turner, as aforesaid; and that plaintiffs, Ivy Turner, Ruth Tinsley and Robt. Martin, were each minors up until a few months before bringing this suit; that plaintiff, Ruth

Tinsley, is now a married woman, and was such married woman prior to reaching her majority.

"Plaintiff states that the then acting sheriff of Pemiscot county sold, on the 9th day of September, 1894, all of said land to pay the taxes for the years 1890 and 1892, or claims to have sold said lands for said purpose; plaintiffs say that said sale or pretended sale made of said lands by the sheriff, as aforesaid, should be held void and of no legal effect, for the following reasons:

"First. Because, while said lands were all in one section and lay contiguous, and had been assessed as one tract, or lot, and were susceptible of being divided into at least four subdivisions of forty acres each, either of which subdivisions would have sold for more than enough to have paid all taxes due on all of said lands, with interest and costs (said taxes, costs and interest being but four dollars and fifty cents), and would have left to these plaintiffs three-fourths of said lands clear and unincumbered, the sheriff, wholly unmindful of his duties in the premises, did not offer to sell said land in its smallest legal subdivision, as aforesaid, as the law commands, or in any division whatever, but offered and sold all of said land at one and the same time, to one and the same bidder, for the sum and price of $40, which, even at the rate and price per acre the land brought at this sale, the said sheriff sold about nine times the amount necessary to sell in order to pay the amount of taxes, interest and costs against the whole tract, thereby sacrificing all of plaintiffs' land for the payment of only four dollars and fifty cents in taxes, interest and costs; that all of said land is practically of one character, and of the same value per acre; that none of the plaintiffs, nor no one representing them, was at said sale, and they did not ask the said sheriff to sell said lands in bulk; but had they known of said sale, they would have ordered said land

divided, and only so much of same sold as would pay the taxes, interest and costs. Plaintiffs further state that said land, at the date and time of said sale by the sheriff aforesaid, was reasonably worth $800, or five dollars per acre.

"Plaintiffs further say that said sheriff's deed should be held void for the reason that no judgment was ever rendered in the circuit court of Pemiscot county in the case of the State of Missouri to the use of D. D. Harbert, Collector, v. R. B. Turner, creating a lien on said lands; and plaintiffs further say that no trial was ever had of said cause in the said Pemiscot Circuit Court, and that said cause was never submitted to the court, nor judgment rendered by the court.

"Plaintiffs further state that said sheriff's deed should be held void and of no effect, for the further reason that no special execution was issued out of the office of the circuit clerk of Pemiscot county authorizing and commanding said sheriff to sell said lands, or any part thereof, and the said sheriff's acts in the premises in selling, or attempting to sell, said lands were without process or authority, and, therefore, void and of no effect.

"Plaintiffs further state that said sheriff's deed should be held void for the reason that it fails to show the amount of taxes due for each year for which the land was sold to pay.

"Plaintiffs further state that they, prior to the time of filing this suit, tendered to defendant the amount paid at the sheriff's sale, aforesaid, for said lands, and the amount paid by defendant, and those under whom he claims as taxes on said lands up to date, together with interest thereon at the rate of six per cent per annum; but defendant has refused to accept same and release said lands to plaintiffs, and that plaintiffs now, in open court, tender to defendant said amounts, as aforesaid.

"Plaintiffs further state that the said sheriff's deed, as aforesaid, places some apparent title in defendant, which is a cloud upon the title of plaintiffs, and that plaintiffs have no adequate remedy at law by which said cloud can be removed from their title to said lands.

"Wherefore, the premises considered, plaintiffs pray the court to hear, try and determine the right, title and interest of the parties, plaintiff and defendant, in and to said lands, respectively, and to adjudge by its judgment or decree the title, estate and interest of the parties herein severally in and to the afore-mentioned premises, and that the title conveyed by same, as aforesaid, be canceled and for naught held, and the title conveyed by same, or attempted to be conveyed by said sheriff's deed, be declared in these plaintiffs, and for such other and further relief, orders, judgments and decrees as to the court may seem just, meet and proper in the premises, and the plaintiffs ever pray."

On a change of venue the case went to the Dunklin Circuit Court, where defendant filed an amended answer, which is in no wise challenged, and it will not therefore be necessary to burden this opinion with a copy of it. The reply was a general denial of the new matter stated in the answer.

The following facts are undisputed:

On and for sometime prior to February 14, 1895, the father of appellants was the record owner in fee of the land in controversy, which was wild, unoccupied swamp land. He had failed to pay the state and county taxes for the years 1890 and 1892, and at the March term, 1895, the collector of said county brought suit against him for the back taxes then due and unpaid thereon. Personal service was had upon Turner by summons in the usual manner, as provided by law. A judgment by default was duly rendered by the circuit court enforcing the State's lien against said land for

said back taxes. On September 4, 1895, the sheriff sold said land to satisfy said lien, and said Wilks became the purchaser thereof. The sheriff executed to Wilks a tax deed, which was in the ordinary form. Said deed was by the latter filed for record on the 28th of October of the same year.

On September 30, 1895, Wilks conveyed said land, by general warranty deed, to Hinton Newton et al., who at the same time executed a deed of trust conveying said land to H. C. Schult, trustee, to secure certain notes given by them to said Wilks for the sum of $1,600, the purchase price of said land. Newton et al. defaulted in the payment of said notes, and the trustee, under the authority of said deed of trust, on July 15, 1899, sold said land at public auction to one F. J. Gordon, and executed to him a trustee's deed in usual form conveying to him the land in question. This deed was filed for record on the 3rd day of August, same year. On April 13, 1900, Gordon, by a general warranty deed, in consideration of the sum of $400 paid him, sold and conveyed this land to respondent, who, on April 28, 1900, filed said deed for record. At the time the latter purchased said land he resided in Scott county, and knew nothing whatever about how said lands were sold or offered for sale by the sheriff on the 4th day of September, 1895, except what appeared from the face of that deed.

The evidence introduced on behalf of appellants tended to show that at the time of the service of the summons in the tax suit against their father, he was sick of body and unsound in mind, and incapable of transacting business; and that he died within a few days after the date of the sale of said land by the sheriff. Their evidence also tended to show that the land at the time it was sold by the sheriff was worth about five dollars an acre.

The evidence of respondent tended to show that at the time the sheriff sold said land, viz., September

4, 1895, and for many years prior and subsequent thereto, it was wild unimproved swamp land, covered with water and was subject to annual inundation from the overflow of the water of the Mississippi River, and was practically worthless. That since respondent became the owner of the land, a levee has been constructed along the west bank of the Mississippi River in the vicinity of the land, and that by the construction of a levee system through that region the lands generally in that section have been reclaimed from the waters and overflows from the Mississippi River. That the cost of constructing and maintaining said levee system was and is being paid for by taxation against the land benefited thereby, which includes the land in question.

The respondent's evidence also tended to show that Robert B. Turner, the father of appellants, was a man of sound mind and capable of attending to his business affairs at the time suit was instituted against him to recover the back taxes against said land. That with full knowledge of all of the facts, appellants, without objection, stood by and permitted respondent to improve said land and erect valuable buildings thereon—all aggregating a sum of about fifteen dollars per acre; and that by means thereof said land has become very valuable.

It is apparent from reading the petition filed in this case, that the pleader was trying to state an equitable cause of action for the cancellation of the tax deed before mentioned, and to remove the cloud cast thereby upon the title to their said real estate. Not only this, counsel for appellants in several places in his brief and argument states and insists that said deed is not void but is only voidable, and for that reason he brought this direct proceeding asking for its cancellation.

Counsel for respondent contend that the petition

does not state facts sufficient to constitute a cause of action, for the reason that it alleges that the sheriff's deed under which respondent claims title was executed without any judgment having been rendered in the circuit court for the taxes against the land in question, and, further, that the sheriff made the sale and executed the deed without having any execution; in short, that there was no judgment and no execution, and that the sheriff's sale was not based upon a judgment of a court nor made in pursuance to any process or authority whatever.

If the allegations of the petition are true, that there was no judgment rendered enforcing the lien of the State for the taxes due on the land, then the appellants, at the time of the institution of this suit, were the owners of both the legal and equitable title to the land in controversy, for the reason that the sheriff's deed, which they asked to have cancelled, was absolutely null and void, and conveyed no right, title or interest whatever in or to said land, but the title thereto passed to them by inheritance from their father, Robert B. Turner, deceased.

The law of this State has long been settled to the effect that where the defendant claims title to land in suit through a record, and a fatal defect appears upon the face thereof, then there is no cloud cast thereby on the title of the plaintiffs such as will call for the exercise of the equitable powers of the court. In such case the plaintiff has a complete and perfect remedy at law by an action of ejectment. [Clark v. Insurance Company, 52 Mo. 272.]

If there was no judgment rendered enforcing the lien of the State for the taxes due upon the land, then that fact would constitute a fatal defect appearing upon the face of the record through which respondent claims within the meaning of the rule of law above announced. [Beedle v. Mead, 81 Mo. l. c. 303.]

NORTON, C. J., in the case of Davis v. Sloan, 95

Mo. 1. c. 553, stated the rule in the following language: "This is a proceeding in equity to remove a cloud on plaintiff's title to certain land in the petition described, and to recover possession of the same. On the trial, judgment was rendered for defendants, from which plaintiffs have appealed. It appears from the averments in the petition that the legal title to the land in question was in plaintiffs, and that at the time the bill was filed they were out of possession, and that defendants were in possession. The judgment must be affirmed on the ground that a party claiming the legal title and being out of possession cannot invoke equitable jurisdiction to remove a cloud on such title. [Keane v. Kyne, 66 Mo. 216; Clark v. Insurance Co., 52 Mo. 272; Magwire v. Tyler, 47 Mo. 115; Janney v. Spedden, 38 Mo. 395.]"

And in the case of Verdin v. City of St. Louis, 131 Mo. 1. c. 112, Judge SHERWOOD said: "This view is illustrated by many cases in this state and elsewhere; there are none to the contrary, thus: 'The settled rule is, that when a defect appears upon the face of the record through which the opposite party can alone claim title, there is not such a cloud upon the title as to call for the exercise of the equitable powers of the court to remove it. But when such claim appears to be valid upon the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony to establish it, it presents a case for invoking the aid of a court of equity to remove it, as a cloud upon the title. . . . But if in the investigation, in tracing back the title, a defect appears upon the record, then it is evident there is no cloud, for the face of the record furnishes the means of detecting the error and apprising parties of the true state of the title.' [Clark v. Insurance Co., 52 Mo. 1. c. 276, 277.] The doctrine of this case was affirmed in Mason v. Black, 87 Mo. 344. A petition showing that plaintiff's property has

been levied upon under an execution issued upon a void judgment and asking for an injunction, presents no ground for equitable relief. [Fletcher v. Heth, 10 Mo. App. 594.] A deed void on its face is no cloud on the title. [Johnson v. Cottingham Co., 8 Mo. App. 575.]'' To the same effect is the Hannibal & St. Joseph Ry. Co. v. Nortoni, 154 Mo. l. c. 149; and Humphreys v. Milling Co., 98 Mo. l. c. 552.

The case at bar is a much stronger case in favor of the respondent than are any of those before cited, for in those cases the judgment was only defective, while here, according to the allegations of the petition, no judgment at all was rendered. We are, therefore, clearly of the opinion that the petition states no cause for equitable relief.

Even though it be conceded that counsel for respondent failed in the trial court to make the objection, that the petition stated no cause of action, yet that failure could avail appellants nothing, for the reason that the failure of the petition to state a cause of action is jurisdictional and may be raised at any stage of the proceedings, even for the first time in this court. Judge Graves, in discussing this question in the case of McQuitty v. Wilhite, 218 Mo. l. c. 591, in speaking for the court, said: ''It has long been held that if a petition states no cause of action, such question can be raised here for the first time, and a judgment thereon should be reversed. [Davis v. Jacksonville Southeastern Line, 126 Mo. 69; Hoffman v. McCracken, 168 Mo. l. c. 343.]''

There are two other questions presented by this record—one is the question of estoppel, and the other is the same as that involved in the case of Shelton v. Franklin, now pending in Court in Banc, regarding the recitals contained in the tax deed; but since the conclusion before reached regarding the insufficiency of the petition fully disposes of the case in favor of the respondent, no useful purpose could be served by de-

ciding either of them, for the reasons that the former
is an ordinary question of estoppel, involving no new
principle; and whatever we might say as to the latter
would add but little, if anything, to what the members
of this division have already written regarding that
question in the Shelton-Franklin case.

Since writing the foregoing opinion this court In
Banc has decided the Shelton-Franklin case before
mentioned. We there held the tax deed to be valid.
That holding is controlling here, and for the reasons
there stated we hold the tax deed here in question valid
also.

We are, therefore, of the opinion that the judg-
ment should be affirmed, and it is so ordered.

*Valliant, J.,* concurs *in toto; Lamm, P. J.,* in re-
sult; and *Graves, J.,* concurs for the reasons stated in
last paragraph of the opinion.