# COATSWORTH LUMBER COMPANY, Appellant, v. D. C. OWEN et al., Respondents.

### St. Louis Court of Appeals, January 5, 1915.

1. **SPECIAL TAXBILLS: Improvement of Streets: Validity of Proceedings.** A resolution passed by the council of a city of the third class, declaring it necessary to pave a street with first-class vitrified paving bricks or blocks, and to curb the same with first-class concrete curbing, according to plans, diagrams and specifications on file with the city clerk, filed by the city engineer, complies with the requirements of Sections 9254 and 9255, R. S. 1909.

2. ———: ———: ———. An estimate of the cost of paving and curbing a street in a city of the third class, filed by the city engineer, which gives the estimated cost of paving the street, stating separately the estimated cost per square yard of the foundation, sand cushions, fillers, and brick surface, and estimates the cost of curbing at a specified sum per lineal foot, and estimates the total number of square yards of paving and lineal feet of curbing and the total cost, complies with the requirements of Sec. 9254, R. S. 1909.

3. ———: ———: ———: **Time for Completion of Work.** An ordinance for a street improvement and the contract for the work provided that the work should be completed on or before a designated date, "unless delayed by bad weather and the council grant an extension of time on that account." The work was substantially completed before the designated date, but there were defects in it, due to the fact that the temperature at times fell below freezing point while the work was being done. After the expiration of the time limit, an ordinance was passed extending the time of completion of the work on account of bad weather. As soon thereafter as the work could be safely done, the defects were remedied under the direction of the city engineer. *Held*, that the special taxbills issued for the cost of the work were not void on the ground that the work was not completed within the time limit.

4. ———: **Cancellation: Quieting Title.** Where a special taxbill for a street improvement is absolutely void for defects apparent on its face and on the face of the tax proceedings, equity will not cancel the bill as a cloud on the title to the land against which it is issued; but the rule is otherwise where the bill appears to be valid on its face and the invalidity asserted is one requiring extrinsic evidence to establish it.

5. ————: **Commencement of Lien.** The time of the commencement of the lien of a special taxbill is determined by the statute creating the right to issue the bill.

6. ————: **Irregularities: Amendment of Bill.** The irregularity in an original special taxbill for a street improvement because issued against three lots jointly may be corrected by the issuance of amended taxbills against each lot, but the lien arises at the date of the issuance of the original bill.

7. ————: ————: ————: **Proper Officer to Sign.** Amended special taxbills, issued in lieu of an original bill, which was irregular, are properly signed by the person who, as mayor, signed the original bill, notwithstanding his term of office had expired.

8. ————: *Performance of Work: Substantial Compliance.* A reasonable and substantial compliance, in good faith, with the ordinance and contract for a street improvement is all that the law requires.

9. ————: ————: ————: **Sufficiency of Evidence.** In an action to cancel a special taxbill for the cost of improving a street in a city of the third class, evidence *held* to justify a finding that the contractor had reasonably and substantially complied, in good faith, with the ordinance and contract provisions.

10. ————: ————: ————. Although a proceeding to enforce a special taxbill issued for the cost of street improvements is *in invitum*, and the law, jealously safeguarding the substantial rights of the citizen, does not permit his property to be burdened with a lien for such improvements unless the contractor has, in good faith, fairly and substantially complied with the terms and conditions of his undertaking, according to the true spirit and intent thereof, nevertheless it is not the policy of the courts to demand a highly technical, literal compliance with the contract stipulations, without regard to the obvious intent and purpose thereof, for such would tend to defeat the very objects of the law authorizing municipalities to provide and contract for the making of improvements of this character.

11. ————: **Action to Quiet Title: Counterclaims.** Where suit is brought to cancel a special taxbill, defendant may enforce the lien thereof by way of counterclaim, under Sec. 1807, R. S. 1909, as being a cause of action arising out of the transaction forming the foundation of plaintiff's claim or connected with the subject of the action.

12. **NEW TRIAL: Appellate Practice: Action on Special Taxbills: Sufficiency of Motion for New Trial.** A motion for a new trial on the ground that the court, in rendering judgment on

special taxbills, erred in allowing interest thereon from the date of their issue, and that the verdict and finding were excessive, preserved to the party complaining the right to question the finding as to interest.

13. **APPELLATE PRACTICE:** Municipal Ordinances: Prerequisites to Review. A municipal ordinance cannot be considered by the appellate court unless it is preserved in the record for review.

14. **SPECIAL TAXBILLS:** Interest. Where neither the ordinance authorizing a street improvement nor that levying the assessment and providing for the issuance of special taxbills for the cost of the improvement provided for interest, interest was not allowable on the taxbills, although, under Sec. 9254, R. S. 1909, the city could have provided that the bills bear interest at the rate of eight per cent per annum, to begin thirty days after issue.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED (*conditionally*).

*Fry & Rodgers* for appellant.

(1) This is a proceeding in *in invitum* and there should be no departure from legal requirements. Rose v. Trestrail, 62 Mo. App. 352; West v. Porter, 89 Mo. App. 153; Schibel v. Merrill, 185 Mo. 550; Construction Co. v. Coal Co., 205 Mo. 81. (2) There was no estimate of the cost of the work as required by the statute. R. S. 1899, sec. 5858, paragraph 8; City of Boonville v. Rogers, 125 Mo. App. 142; Wheeler v. Popular Bluff, 149 Mo. 36; City of Independence v. Briggs, 58 Mo. App. 323; City of Kirksville v. Coleman, 103 Mo. App. 215; City of De Sota v. Showman, 100 Mo. App. 323; Erie v. Brady, 150 Pa. 462. (3) Time was the essence of the contract. The work was not completed within the contract time, on or before January 1, 1909. An ordinance to extend the time, passed in February, 1909, after the expira-

tion of the contract time, was of no effect, and the tax bills are void. Neill v. Gater, 152 Mo. 585; Hund v. Rockliff, 192 Mo. 312; Heman v. Gilliam, 171 Mo. 258; Schibel v. Merrill, 185 Mo. 550; Paving Co. v. Munn, 185 Mo. 569; Montague v. Kalmeyer & Co., 138 Mo. App. 288; Construction Co. v. Coal Co., 205 Mo. 49. (4) The original tax bill plaintiff asked to be cancelled was void, because it was a joint tax bill against the three lots. R. S. Mo. 1909, sec. 5252. On defendant's answer voluntarily withdrawing and canceling said tax bill, plaintiff was entitled to a decree. (5) The tax bills were not legally issued and were void. All special tax bills shall be issued by the city. R. S. Mo. 1909, sec. 9254. They shall be "signed by the mayor and attested by the city clerk with the seal of the city attached." R. S. 1909, sec. 9257. (6) Plaintiff was not personally liable for the special taxes. It was not a personal indebtedness nor a mutual indebtedness. The tax bills on which defendant recovered judgment were not in existence "at the commencement of the plaintiff's action." Hence not subject of counterclaim. R. S. Mo. 1909, sec. 1807. The tax bills can be enforced only by the statutory action to subject the specific property to the payment of the tax. This statutory remedy which is an action *in rem,* is the exclusive remedy. The court erred in entering judgment on defendant's counterclaim. City of Clinton v. Henry Co., 115 Mo. 557; Seibert v. Tiffany, 8 Mo. App. 33. (7) The court erred in allowing eight per cent interest, or any interest, prior to date of judgment. R. S. Mo. 1909, sec. 9254. As the council made no provision for interest and the tax bills were not issued for interest, the court erred in adjudging interest. And especially from date of tax bill when even the council could not have required interest until 30 days after April 12, 1911. R. S. 1909, sec. 9254, paragraph 10. (8) On the facts plaintiff is entitled to a decree. This being an action in equity, the appellate court will re-

view the entire evidence regardless of the opinion of the trial court. Where material was not used or the work done as required by the contract, the collection of the tax bills will not be enforced. Schibel v. Merrill, 185 Mo. 550; Coulter v. Construction Co., 131 Mo. App. 235; Cole v. Skrainka, 37 Mo. App. 427, 105 Mo. 303; Herman v. Gerardi, 96 Mo. App. 231; Traders Bank v. Payne, 31 Mo. App. 512; Heman v. Franklin, 99 Mo. App. 346; McGath v. St. Louis, 215 Mo. 207.

*E. S. Gantt, Philip S. Gibson* and *David H. Robertson* for respondent Owen.

(1) The preliminary resolution was sufficient. By reference the plans and specifications were incorporated in the resolution. They were on file at the clerk's office. Bridewell v. Cockrell, 132 Mo. App. 203. (2) The estimate is sufficient. Gratz v. Kirkwood, 165 Mo. App. 209; Boonville v. Stephens, 238 Mo. 339, 355. (3) The work was completed in contract time. The work was actually all done before January 1, 1909, but weather conditions ruined portions of the curbing and the work thereafter done was merely repair. However, days lost by bad weather were by the ordinance for the work, number 330, to be added to the time. As the work of curbing could not be done until April, 1909, on account of freezing, the time was automatically extended. If the curbing had been stopped at the beginning of freezing weather the contractor would have had the right to postpone the completion until warm weather. However, he attempted to continue with the work and when the freezing weather ruined part of it he was entitled to wait until warm weather to conclude. Pentice v. Schmidt, 202 Mo. 703. The ordinance exhibit 8 is not an attempt to extend the time. The bad weather had already extended it. The ordinance simply recognized this fact and postponed acceptance and issuance of the tax bills until the contractor had rem-

edied the defects caused by bad weather. (4) The tax bills set out in the defendant's answer were legally issued. It was within the power of the person who as mayor issued the original tax bills, to amend the same to conform to the requirements of the statute, after he ceased to hold the office and no other person could sign them. Kiley v. Cranor, 51 Mo. 541; Galbreath v. Newton, 45 Mo. App. 312; Riley v. Stewart, 50 Mo. App. 494; Morley v. Weakley, 86 Mo. 450; Stadler, Admx. v. Roth and Meyer, 59 Mo. 400. (5) The tax bills upon which the respondent recovered judgment were a proper subject for a counterclaim in this action. Page and Jones "Taxation and Assessment," sec. 1445, page 2102; Kendig v. Knight, 14 N. W. 78; Smith v. Des Moines, 76 N. W. 836; Henman v. McNamara, 77 Mo. App. 1; The City of Kansas City to the use of Coates v. Ridenour, et al., 84 Mo. 253; Swope v. Weller, 119 Mo. 556. (a) The cause set out in the counterclaim was in existence at the time of the commencement of the action. Cases cited under point 4. (b) The counterclaim in the case at bar comes under the first division of section 1807 of R. S. of Mo. 1909, "cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action." A counterclaim coming within this clause need not exist at the commencement of the action. California Creameries Co., Limited, v. Pacific Sheet Metal Works, 164 Fed. 978; Smith v. French, 13 N. C. 1; 53 S. E. 435. (6) The court properly allowed interest at eight per cent on the tax bills. (7) The contractor cannot be held to a literal compliance with the terms of the contract; substantial compliance is all that is required. Cole v. Skrainka, 105 Mo. 309; Sheehan v. Owen, 82 Mo. 458; Meyers v. Wood, 173 Mo. App. 577; Trimble v. Stewart, 168 Mo. App. 276; Steffen v. Fox, 124 Mo. App. 635; City of St. Louis v. Rueckling, 232 Mo. 23.

ALLEN, J.—This is a suit in equity, prosecuted by plaintiff corporation, the owner of certain property abutting upon Jefferson street in the city of Mexico, Missouri, to cancel a special tax assessment thereon in favor of the defendant contractor for the paving and curbing of said street. The original tax bill, which the petition seeks to have cancelled, was for $1137.48, and was issued on May 4, 1909, jointly against three lots belonging to the appellant, though the ordinance levying the special assessment levied it against the lots separately. The suit was instituted on August 20, 1910, and during its pendency, to-wit, on April 12, 1911, the original tax bill was cancelled and withdrawn by the city, and a separate tax bill was issued against each lot for $379.16. And thereafter the defendant Owen, the contractor, filed an amended answer, alleging the cancellation of the original tax bill and the issuance of the three new bills, and therewith filed three separate counterclaims seeking to enforce the lien of the new tax bills.

It is unnecessary to further notice the pleadings. The suit was originally instituted against both Owen, the contractor, and the city, but the court dismissed it as to the city, on the ground that it had no interest in the litigation. The trial, before the court sitting as a chancellor, resulted in a finding for defendant Owen, both on plaintiff's bill and on each of said defendant's three counterclaims. Judgment followed accordingly, and the case is here upon plaintiff's appeal.

On July 15, 1908, the city council of the city of Mexico passed a resolution, which was thereafter duly published, declaring it necessary to pave the portion of Jefferson street in question with first-class vitrified paving brick or blocks, and to curb the same with first-class concrete curbing, reference being made to plans, diagrams and specifications on file with the city clerk, filed by the city engineer; the cost of such improvement to be paid by levying an assessment against the abut-

ting property. On the same day plans and specifications were filed by the city engineer with the city clerk, the former consisting of a plat or map, and the specifications being comprised within and made a part of a contract prepared in blank to be entered into with the successful bidder for such street improvement.

On August 3, 1908, an ordinance was passed authorizing the making of the improvement covered by the resolution aforesaid, to be paid for by the issuance of special tax bills, providing, among other things, for the publication for bids and the letting of the work to the lowest and best bidder. Thereafter the city engineer submitted an estimate of the cost of the improvement; and upon bids being received defendant Owen was the successful bidder, and a contract was duly entered into with him of date August 20, 1908.

The contractor sublet the work of putting in the curbing to one Hendricks, as the contract permitted. It appears that the work both upon the paving of the street and the putting in of the curbing progressed with reasonable speed, and was completed by December 25, 1908, but it seems that the curbing cracked and crumbled in places, requiring it to be repaired, which, on account of unfavorable weather conditions, was not done until April, 1909. This having been done, the city engineer reported that the entire work had been completed in substantial compliance with the contract, and the same was thereupon accepted and, by an ordinance approved May 4, 1909, tax bills were ordered to be issued to pay the cost thereof.

Such further details of the evidence as it may be necessary to notice in connection with the questions raised on appeal will be referred to in the course of the opinion.

I. The point is made that the resolution declaring the improvement necessary is too vague and uncertain in its terms, in that certain distances and dimen-

sions are not shown; but it is clear that these are sufficiently supplied by the plans and specifications filed by the city engineer in the office of the city clerk, which by specific reference were incorporated into the resolution. [See Bridewell v. Cockrell, 122 Mo. App. 196, l. c. 203, 99 S. W. 22.] An examination of the resolution shows clearly that it fully complies with the requirements of the statute, viz., sections 9254 and 9255, Revised Statutes 1909, applicable to cities of the third class.

II. It is urged that there was no estimate of the cost of the improvement within the contemplation of the statute, supra. But this contention is likewise without merit. The estimate filed by the city engineer gave the estimated cost of paving the street, stating separately the estimated cost per square yard of the foundation, sand cushions, fillers and brick surface, which aggregated $1.75 per yard for the finished pavement. The cost of the curbing was estimated at sixty cents per lineal foot. And it was estimated that there would be 14,207.2 square yards of paving and 6546 lineal feet of curbing, the cost of the whole totaling $24,995.60.

It is altogether clear that the estimate is sufficient. A number of cases are cited in support of appellant's position, but they are without influence particularly in view of the recent ruling of the Supreme Court in Boonville v. Stephens, 238 Mo. 339, 141 S. W. 1111, where an estimate was held sufficient in which the engineer merely stated that in compliance with his duty as city engineer he had computed the cost of paving the street and found "that the work should be done at a cost not to exceed $1.47 per square yard." This ruling we followed in Gratz v. City of Kirkwood, 182 Mo. App. 581, 166 S. W. 319, and it is conclusive here.

III. It is insisted by appellant that the assessment is void because of the failure of the contractor to complete the work within the time limit.

The ordinance above referred to, authorizing the improvement, provided that the work should be completed on or before Janaury 1, 1909, but that days lost in consequence of any restraining order or court proceedings or bad weather should be added to the time specified. And the contract provided that the work should be completed on or before January 1, 1909, "unless delayed by restraining orders, court proceedings, or bad weather, and the council of the city of Mexico shall grant an extension of time therefor."

It appears that both the paving and the curbing were fully constructed by December 25, 1908, and the whole street thrown open to traffic, though the curbing had crumbled or "flaked" off in places. There was much evidence to the effect that the damages to the curbing was occasioned by the freezing of the newly made concrete at times, during the progress of the work. On the part of plaintiff it was sought to show that the condition of the curbing was due to poor workmanship and an improper mixture of the concrete; but the evidence well supports the conclusion which the trial court evidently reached that the defects in the curbing were due to the fact that the temperature at times fell below the freezing point, particularly at night, while the curbing was being installed, whereby parts thereof were damaged.

On or about December 28, 1908, the city engineer reported that the work had been completed in substantial compliance with the plans and specifications therefor. It appears, however, that plaintiff, who had opposed the improvement from the beginning, and some other citizens, protested against the acceptance of the work; and on February 8, 1909, an ordinance was passed which recited that some defects in the curbing had developed by reason of the "winter weather," and which purported to postpone the acceptance of the work on account of bad weather, in accordance with the ordinance and contract under which the same was

done; the contractor being thereby required to comply with his contract as soon as it was reasonably possible to do so, "taking into consideration the condition of the weather as suitable to said work."

Thereafter, in April, 1909, and, it is said, as soon as the work could safely be done, defects in the curbing were remedied, under the direction of the city engineer, who, it appears, required the resurfacing thereof for the length of an entire block wherever repairing was necessary in such block, so that it would not present an appearance of "patchwork." On May 3, 1909, the engineer renewed his report to the mayor and council, to the effect that the work had been completed in compliance with the contract, stating that the contractor had repaired all of the aforesaid defects in the curbing. And thereupon the work was duly accepted and the issuance of the taxbills therefor authorized.

Appellant's contention is that the time for completing the work expired January 1, 1909, and that the municipal authorities were without power thereafter to authorize an extension of time and revitalize the contract, and that the assessment for the work, and the taxbills predicated thereupon are necessarily void, citing: Neill v. Gates, 152 Mo. 585, 54 S. W. 460; Hund v. Rockliffe, 192 Mo. 312, 91 S. W. 500; Heman v. Gilliam, 171 Mo. 258, 71 S. W. 163; Schibel v. Merrill, 185 Mo. l. c. 550, 83 S. W. 1069; Paving Co. v. Munn, 185 Mo. l. c. 569, 83 S. W. 1062; Montague v. Kalmeyer & Co., 138 Mo. App. 288, 120 S. W. 637; Construction Co. v. Coal Co., 205 Mo. 49, 103 S. W. 93. But it is quite clear that the doctrine invoked by appellant has here no application, and a review of the foregoing cases is unnecessary. Neither the ordinance authorizing the improvement, nor the contract, unconditionally required the work to be completed within a definite specified time. The controlling provisions of the ordinance, upon which the provisions of the contract to the same general effect are predicated, are that days lost on ac-

count of bad weather shall be added to the time specified. It cannot be said, therefore, that the time limit expired January 1, 1909, for the contract was necessarily kept alive during such time as it would be reasonable to allow on account of weather conditions.

It appears that the work had been, at least, substantially completed prior to January 1, 1909, and the street thrown open to traffic; and that all that was thereafter done was to remedy certain minor defects which had developed in the curbing as stated above. Certainly, in view of the aforesaid ordinance provisions, if not otherwise, the contractor ought to be afforded reasonable opportunity to remedy such defects. In this connection see Curtice v. Schmidt, 202 Mo. 703, 101 S. W. 61; Gist v. Construction Co., 224 Mo. 369, 123 S. W. 921.

We, therefore, rule the point against appellant.

IV. Appellant asserts that the original taxbill, which the petition sought to cancel, was void because issued against three lots jointly; that the defendants recognized this by causing it to be withdrawn and cancelled; and that therefore plaintiff was entitled to a decree. But as the question arises and is here presented, it is unnecessary for us to determine whether the original taxbill should on this account be regarded as absolutely void, or the defect viewed as a mere irregularity which could be corrected by issuing amended or corrected taxbills in lieu of the original. There appears to be authority to support the contention that the original taxbill was void because issued against three lots jointly. [See Riley v. Stewart, 50 Mo. App. 594.] But as to this we express no opinion.

If the original taxbill was rendered absolutely void, for the reasons urged, then, we think, it must follow that there was no such cloud thereby placed upon plaintiff's title as to call for the exercise of the equitable powers of the court to remove it, and that

plaintiff was not entitled to maintain a bill in equity seeking to obtain the relief here sought. If the taxbill was absolutely void, for the reasons stated, then the defect, which rendered it so, was one apparent upon the face of the tax proceedings, and upon the face of the taxbill itself. In such cases equity will not interfere, though the rule is otherwise where the title, lien or claim, which is said to cast a cloud upon plaintiff's title, appears to be valid upon its face, and the invalidity asserted therein is one which requires extrinsic evidence to establish it. [See Turner v. Hunter, 225 Mo. 71, 123 S. W. 1097; Hannibal & St. J. R. Co. v. Nortoni, 154 Mo. 142, 55 S. W. 220; Verdin v. St. Louis, 131 Mo. 26, 32 S. W. 480, 36 S. W. 52; Henman v. Westheimer, 110 Mo. App. 191, 85 S. W. 101; Perkins v. Baer, 95 Mo. App. 70, 68 S. W. 939.] What is said by Burgess, J., in Verdin v. St. Louis, supra, to the effect that equity will nevertheless interfere where the defect is such as to require legal acumen to discover it, is not here applicable, and whether it is to be regarded as the law in this State we do not decide. [See Turner v. Hunter, supra, l. c. 83; Henman v. Westheimer, supra, l. c. 195.]

The prime object of plaintiff's suit is to remove the cloud said to be cast upon its title by the apparent lien of the taxbill. In fact it is under this head of equity jurisprudence that plaintiff's case must proceed. [See Verdin v. St. Louis, supra, l. c. 114.] Under the statute (section 9254, Revised Statutes 1909) the taxbill is made a lien for a period of fixe years, "after date of issue," unless sooner paid. The time of the commencement of the lien is determined by the statute creating it. [See Jaicks v. Sullivan, 128 Mo. 177, 30 S. W. 890; Everett v. Marston, 186 Mo. l. c. 599, 85 S. W. 540.] Since the lien has its inception at the date of the issuance of the taxbill, if the original taxbill was absolutely void, no lien arose under it, and this appeared on the face of the proceedings themselves

and on the very face of the taxbill. And if such be true then there was no such cloud cast upon plaintiff's title as would entitle it to maintain a bill in equity to remove the same.

On the other hand, if the issuance of the original taxbill against the three lots is to be regarded as a mere irregularity, then the error of the clerk in so issuing it may be corrected by the issuance of amended or corrected taxbills in lieu thereof. [Kiley v. Cranor, 51 Mo. 541; Stodler v. Roth, 59 Mo. 400; Galbreath v. Newton, 45 Mo. App. 312.] In such event, though the original taxbill was irregularly issued, nevertheless a lien arose at the date of the issuance thereof, which could be perfected by the timely issuance of amended taxbills. [See, also, Gruner Lumber Co. v. Hartshorn-Barber Realty & Bldg. Co., 171 Mo. App. 614, 154 S. W. 846.]

In any event, plaintiff is not entitled to a decree because of the fact alone that the original taxbill was issued against three lots, and we may well allow this phase of the matter to rest here.

V. It appears that the three new taxbills were signed by one Willard Potts, who was mayor when the original taxbills were issued for this work and who signed all of them; but who was out of office when the new bills were issued; and it is contended that he was without authority to thus act after the expiration of his term of office. But that the former mayor had authority to sign the three taxbills in question, after the expiration of his term of office, to take the place of the one previously isued and signed by him as mayor, and that he alone was lawfully authorized to act in the premises, is sanctioned by the rulings in Kiley v. Cranor; Stodler v. Roth; Galbreath v. Newton, supra. We therefore hold that the new taxbills were not for this reason invalid.

VI. Much of the contest below waged about the question of performance of the contract on the part of the contractor, plaintiff averring and seeking to show that the street was not paved and curbed in accordance with plans and specifications, whereby the taxbills therefor were rendered void. Respecting this matter a great mass of testimony was adduced pro and con, which is preserved in the voluminous record before us; and it is pressed upon us that a review of this testimony will reveal that many of the requirements of the specifications filed and embraced within the contract were not complied with. It is said that the concrete for the curbing was not prepared as the specifications required, the sand used not of the kind and quality specified, and that the finished curbing was not of the required dimensions, or the requisite quality; that much of the rock foundation for the street did not meet the requirements as to the size and quality of the rocks permitted to be used; that inferior brick was used; and that neither was the foundation constructed or the brick surface laid in compliance with the various details of the methods required by the specifications to be pursued.

The learned chancellor below, however, found against plaintiff's said contentions, and a careful scrutiny of the entire record has convinced us that his findings ought not to be disturbed. It appears that there was at least a substantial and reasonable compliance with the ordinance and contract provisions in good faith, throughout the performance of the work, which is all that the law requires. [Cole v. Skrainka, 105 Mo. l. c. 309, 16 S. W. 491; Steffen v. Fox, 124 Mo. l. c. 635, 28 S. W. 70; Porter v. Paving Co., 214 Mo. 1, 112 S. W. 235; Gist v. Construction Co., 224 Mo. 369, 123 S. W. 921; City of St. Louis v. Ruecking, 232 Mo. 325, 134 S. W. 657; Meyers v. Wood, 173 Mo. App. 564, 158 S. W. 909.]

Though the proceeding is *in invitum,* and the law, jealously safeguarding the substantial rights of the citizen, does not permit his property to be burdened with a lien for such improvements unless the contractor has, in good faith, fairly and substantially complied with the terms and conditions of his undertaking, according to the true spirit and intent thereof, it is not the policy of the courts to demand a highly technical, literal compliance with the contract stipulations, without regard to the obvious intent and purpose thereof, for such would tend to defeat the very objects of the law authorizing municipalities to provide and contract for the making of improvements of this character.

From the record before us, we conclude that an abutting property owner has here no just ground to complain of the manner in which the work in question was done by the contractor under his contract.

VII. Nor do we see any objection to permitting the defendant contractor to enforce the lien of the three taxbills set up by him by way of counterclaims. The right to enforce the lien of a taxbill under such circumstances, as a counterclaim, in the nature of a crossbill, appears to be within the purview of the first subdivision of section 1807, Revised Statutes 1909, as being a cause of action arising out of the "transaction set forth in the petition as the foundation of plaintiff's claim or connected with the subject of the action." [And see Chicago, etc., Ry. Co. v. Bank, 134 U. S. 276.]

VIII. The court found that there was due upon each of the three new taxbills $379.16, the amount named therein, together with interest thereon at eight per cent per annum from the said date of issue, amounting to $28.07; making a total of $407.03 found to be due upon each bill. Appellant complains of the allowance of any interest prior to the entry of the judgment.

As to this, respondent asserts that appellant did not specifically complain of the allowance of any interest in its motion for a new trial, but that such motion must be taken as complaining of the allowance of interest from the issuance of the new taxbills, instead of from thirty days thereafter. [See Sec. 9254, R. S. 1909.] One ground of the motion is, that "the court erred in allowing interest on the taxbills from the date they were issued;" and another is that "the verdict and finding is excessive." These, we think, sufficed to preserve appellant's right to question here the above-mentioned findings of the court as to the interest allowable.

The statute provides that the city may cause special taxbills for such improvements, to bear eight per cent interest, to begin thirty days after issue. [Sec. 9254, supra.] But the taxbills in suit do not by their terms purport to bear interest at all; and neither does the ordinance authorizing the improvement, nor that levying the assessment and providing for the issuance of the taxbills, make any provision as to interest. It is said that such provision is made by a general ordinance of the city, but the record before us does not contain such ordinance or show that it was introduced in evidence, and it may not be considered, whatever might otherwise be its effect.

Liens of this character are created solely by the due exercise of the powers granted by law to the municipal corporation, and dependent thereupon; and are not to be extended by implication. [See Everett v. Marsten, 186 Mo. l. c. 599, 85 S. W. 540.] And though the statute authorizes the municipality to make certain provisions as to interest upon such taxbills, the interest allowable thereupon, to be included within the amount chargeable as a lien, cannot be extended beyond the terms and provisions of the ordinances and the taxbills issued in conformity thereto. [See Springfield ex rel. v. Kirby, 73 Mo. App. 640.]

It follows that the judgment below enforces the lien in question for a sum which is excessive by the amount of interest allowed upon the three taxbills and included therein; though the judgment itself properly bears six per cent interest under the general statute.

If respondent within ten days shall remit the amount of the aforesaid interest, to-wit, $86.01, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.