CLAY COUNTY STATE BANK, A CORPORATION, APPELLANT, v. THE HEALTH CULTURE COMPANY, A CORPORATION, ET AL., RESPONDENTS. —139 S. W. (2d) 1049.

Kansas City Court of Appeals. April 29, 1940.

*John W. Moore, Robert Moore* and *Richard Moore* for appellant.

*C. H. Kohler* and *Lawson & Hale* for respondents.

BLAND, J.—This action, commenced on June 2, 1934, is in seven counts, each on an installment tax bill issued by the City of Excelsior Springs, a city of the third class. Said bills are for the grading, paving, curbing and otherwise improving Bluff Street in said city. Plaintiff is the owner of the bills by assignment. Defendants are the owners, mortgagees or otherwise interested in the property, which is subject to the lien of the tax bills.

After the suit was filed the tax bills were corrected in a manner hereinafter described. On June 12, 1939, plaintiff filed an amended petition, which pleaded the tax bills as corrected. Defendants demurred to each count of the amended petition on the ground that it did not state facts sufficient to constitute a cause of action, and the demurrer was sustained by the court as to each count. Plaintiff amended the prayer of its petition by interlineation to include a prayer for an order correcting said tax bills and for general relief. Defendants' demurrer was refiled and again sustained. Plaintiff refused to plead further, resulting in a judgment dismissing its cause. It has appealed.

Count One of plaintiff's amended petition, as amended by interlineation, alleges that the City of Excelsior Springs is a city of the third class; that on June 25, 1928, the council adopted and the Mayor approved, resolution No. 223 declaring the improvement to be necessary; that such resolution provided for a hearing on July 9, 1928, upon the necessity for the work; that said resolution was duly published; that on July 9, 1928, such hearing was held and the council adopted and the Mayor approved another resolution No. 227 reaffirming the necessity of such work; that on said last mentioned date, the council passed and the Mayor approved Ordinance No. 3200 providing for the doing of such work; that thereafter the city entered into a contract for the doing of such work; that said work was done according to the contract, plans, specifications and ordinances, and said street so paved, etc., for a distance of not more than 1200 feet so as to connect at both ends with other paved streets; that said work was accepted and the cost apportioned by the city engineer and accepted and apportioned by the council by ordinance duly adopted; that on September 10,

1928, the city, through its clerk, issued its special tax bill certifying that the real estate therein described was charged with the sum of $179.95 as a special tax for such work and that such amount was levied and assessed as a special tax against such real estate. The tax bill is then set forth *in haec verba*.

The petition then alleges that on June 29, 1938, the city clerk corrected, by interlineation, an error made by him in issuing said tax bill and certified the date of making such correction on the margin thereof. The tax bill, as corrected, was set forth *in haec verba*.

The petition then alleges that payments had been made upon the tax bill and that the real estate was charged in favor of plaintiff with the balance of said tax bill, with interest, and that all claims of defendants are subject thereto.

Plaintiff prays that the correction be approved; that the court order said tax bill corrected accordingly, render special judgment for the enforcement of the lien of such tax bill, and for general relief and costs.

Count Two of the petition contains the same allegations as does Count One, except that it is upon a different tax bill, and alleges that the bill was issued against "W ½ of 4.5 Lot 13 Block" in the original old town now Excelsior Springs.

Counts Three to Seven inclusive are identical with Count One, except they show a single tax bill was issued against four lots in each instance. They also contain allegations that on February 19, 1934, pursuant to ordinance and after such tax as to each lot had been reapportioned and relevied and credits for payments given, amended tax bills were issued covering separate lots mentioned in the original tax bill, and a new tax bill, covering but one lot, is set forth *in haec verba*.

It is shown in the petition that there was one amendment made by interlineation by the clerk common to each of the tax bills mentioned in the seven counts of the petition; that this amendment, made on June 2, 1938, after the suit was filed, consisted of striking out the recitation contained in each tax bill relating to the history of the proceedings and concerning passage of the ordinance, and its publication, declaring the necessity for the work, and subsequent proceedings; such matter so stricken out reading as follows: "that a majority of the resident owners of the lands would be liable for the costs of the improvements at the date of the passing of said resolution (declaring the work necessary) who also owned a majority of the front feet owned by residents of said city abutting on that part of said street so proposed to be improved, did not, within ten days after the date of the last publication, file with the city clerk of said city their protest against such improvement; that the Council of Excelsior Springs, Missouri, in pursuance of said resolution did, on the 9th day of July, 1928, pass Ordinance No. 3200," and inserting in lieu thereof: "that anyone desiring to do so might appear before the council on the 9th day

of July, 1928, and be heard on the question of the necessity of such work;'' that the council, pursuant to said resolution ''did on the 9th day of July, 1928, after hearing everyone desiring to appear and be heard on the question of the necessity of said work, pass a resolution reaffirming the necessity for doing such work, and on the 9th day of July, 1928, pass Ordinance No. 3200.''

It would appear that the original tax bills were issued under the theory that the proceeding was under section 6842, Revised Statutes of Missouri, 1929, which provides, generally, for the issuing of tax bills by cities of the third class. The amendment was on the theory that the proceeding was under section 6843, Revised Statutes of Missouri, 1929, relating to the improvements of streets for not more than 1200 feet so as to connect at both ends with other improved streets.

As Count One covered a tax bill issued against but one lot, there was no amendment or issuance of a new or corrected tax bill showing that the tax had been reapportioned and relevied, as was true as to Counts Three to Seven inclusive. Likewise, as to Count Two, there was no amendent or issuance of a new or corrected tax bill, because there was no allegation of any reapportionment or relevying of the tax so as to divide it between the lot and a half mentioned therein.

Section 6841, Revised Statutes of 1929, relating to cities of the third class, among other things provides: ''Every special tax bill shall be a lien against the land described therein for five years after its date, unless sooner paid, excepting tax bills payable in installments as herein specified, the lien of which shall not expire until one year after date of the maturity of the last installment. . . . The cost of grading, paving, curbing, guttering and making sidewalks may be paid for in five annual installments, payable respectively in one, two, three, four and five years after the date of the special tax bill, each installment to be one-fifth of the original amount of the tax bill, together with all of the then accrued interest; *provided*, that the owner of any tract of land chargeable with a part of the costs of any improvement shall, prior to the acceptance of the work by the city, notify the city clerk in writing that he desires to so pay the tax bill to be issued against his property.''

Defendants contend the demurrer was properly sustained because all of the tax bills sued upon are barred by the five year Statute of Limitations contained in section 6841, which defendants say is a statute of extinguishment.

As before stated, all of the tax bills involved in this suit were issued in installments. The petition fails to disclose that they were so issued as a result of a request by the owners of the land involved, as provided by section 6841. In consequence of this defendants contend that they were improperly issued as installment tax bills and they were barred five years after their issuance and when this suit was brought. This same contention was ruled against the land owners in City of Kennett

v. Randal, 52 S. W. (2d) 217, a decision by the Springfield Court of Appeals and, as we fully concur in what was held in that case, we need not discuss the matter further, but rule the contention against the defendants.

Defendants, however, contend that the demurrer was properly sustained as to Count Two for the reason that the allegations in this count show that the tax bill was issued against more than one lot and there is nothing in the petition to show that the lot and a half described in the bill was, in fact, but one parcel or tract of land made such on account of the use that had been made of the land by its owner. In support of this contention defendants cite Barber Asphalt Co. v. Peck, 186 Mo. 506; City of Cameron ex rel. v. Pixlee, 211 S. W. 96. These cases hold that special tax bills must be assessed separately against each lot and not one tax bill assessed collectively against more than one lot; but where more than one lot is assessed as one parcel or tract of land, the holder of the bill, nevertheless, may establish its validity by pleading and proving that the owner had disregarded the lot lines and treated the lots as one tract or parcel of land. The first case cited was based upon an enactment containing a different provision from that appearing in section 6841, Revised Statutes of Missouri, 1929, governing the tax bills issued in this case.

Section 6841, Revised Statutes 1929, provides, among other things, that "the cost of grading, paving, curbing or otherwise improving any alleyway and the roadway part of any street . . . shall be charged against the lots and tracts of land fronting or abutting on the street or alley so improved, along the distance improved, in proportion to the number of fronting or abutting feet;" that "on the completion of any improvement, in accordance with the contract for same, the city engineer, or other official in charge of the improvement, shall compute the cost thereof, and apportion said cost among the tracts of land chargeable therewith, charging each tract of land with its proportionate part of said costs, as herein required, and shall make a written report to the council that the improvement has been completed in accordance with the contract for same, which report shall also contain a description of each tract of land chargeable with a part of the costs of the improvement, and the amount with which it is chargeable. If the council accepts said work and approves said report, which acceptance and approval may be made by a motion duly adopted, then the city clerk shall immediately thereafter issue and deliver to the contractor who did the work special tax bills in payment for the work in accordance with the engineer's report, which tax bills shall be signed by the clerk and under the corporate seal of the city. . . . In all actions thereon such tax bill shall be *prima facie* evidence of its own validity, of the facts authorizing its issue, and that it is a special lien on the land described in it."

In the case of Barber Asphalt Co. v. Peek, *supra,* the ordinance un-

der which the work was done provided: "The president of the board of public improvements shall compute the cost of the whole improvement and levy and assess the same against *each lot* of ground chargeable therewith in the names of the owners in the proportion that the linear feet of said improvement bears to the total number of linear feet of all the property chargeable with said special tax."

However, in this case, instead of the tax bill being issued against the single lot adjoining the improvement, one tax bill was issued against four lots and there was no pleading or proof that the land owner had disregarded the lot lines in the use of his land. In the case at bar the statute provides that the city engineer or other official in charge of the improvement shall compute the cost of the improvement and "apportion said cost among the tracts of land chargeable therewith."

In Count Two of the petition it is alleged that the cost of the improvement was duly apportioned by the city engineer and, which apportionment was, by ordinance, duly adopted and approved by the city council and the tax bill which is pleaded *in haec verba* recites that "the city engineer in charge of said improvement had computed the cost thereof and apportioned said costs among the tracts of land chargeable therewith, charging *each tract of land with its proportionate part of the total cost thereof as required by law*, and has made a report thereof to the city council that the City of Excelsior Springs, Missouri, has received and accepted said work and has approved said report of said engineer and authorized and directed the city clerk to issue the special tax bills therefor;" that the city clerk "hereby issues its special tax bill . . . in the sum of $269.93 which said sum has been by the resolutions, ordinances and proceedings aforesaid charged, levied and assessed against the following described real estate situate. in the City of Excelsior Springs, Clay County, Missouri, to-wit W. ½ of 4.5, Lot 13 Block Original Town Addition to Excelsior Springs, Missouri, as a special tax for its proportionate part of the cost of said improvements, materials and labor furnished by said contractor. THIS TAX BILL, is issued in favor of Clay County Construction Company against *the tract* of land above described for the sum levied and charged against it as aforesaid." (Italics ours.)

It thus appears that the tax bill covered by this count of the petition was issued against the tract of land chargeable therewith in accordance with the provisions of the statutes. The use of the word "tract" in the statute appears merely to be a recognition by the Legislature of the common law rule that each parcel of land whether it be a lot, a piece, or various lots or pieces, which have been made one tract or parcel by the use made of them by their owners, must be charged with its proportionate cost of the improvement. In this case if the lot and a half described in Count Two was not made one tract by its owner, by the use he made of it, then it was improperly assessed. However,

the engineer, in this case, has assessed the tax against the lot and a half as constituting but one tract and the statute must be considered as having been complied with, at least *prima facie,* or in the absence of evidence that the lot and a half did not, in fact, constitute a "tract." From the allegations of the petition it could be reasonably inferred that the "W ½ of 4.5 Lot 12 Block Original Town Addition," etc., constitutes a tract of land within the meaning of the statute.

In the Pixlee case the statute provided that the council should levy and assess a special tax, by ordinance, against *each lot or piece* of ground. The statute is similar to the one involved in the case at bar. In that case the petition showed that the tax bill in suit was issued against Lots 2, 4, and 6, Lot 49, in the City of Cameron. It was held that the petition, on its face, showed that the tax bill was void. However, there was no allegation or suggestion of any kind in the petition that the three lots constituted a "piece," that is, one parcel of land, within the meaning of the law.

As before stated, in the case at bar, the allegations of the petition, including the provisions of the tax bills, which were set forth *in haec verba* therein, show *prima facie* that the lot and a half in controversy in this case constitute a tract of land.

Counts Three to Seven, inclusive, of the petition, as before stated, plead that on February 19, 1934, in pursuance to ordinance and, after the tax as to each lot had been reapportioned and relevied, and credits for payments given, a tax bills were issued covering separate lots, which had been included collectively in one original tax bill and the tax bill last set forth in each of such counts is such amended tax bill as corrected. (Both the original and the new tax bills are copied in the petition.)

Defendants contend that the special tax bills described in these counts of plaintiff's petition are not only defective and irregular, but absolutely void, for the reason that each and all of them originally purported to and did include on their face more than one parcel of land and, having been absolutely void, they could not have been validated by amendments, the issuance of new tax bills or corrected or amended tax bills.

We think there is no merit in this contention.

Section 6841, Revised Statutes 1929, specifically provides: "Any error that may be made in issuing any tax bill may be corrected by the city clerk, who issued it, or his successor in office, either by interlineation in it, or by issuing a new tax bill in lieu of the erroneous one, but when a tax bill is corrected by interlineation the date of making the same shall be certified to by the clerk on the margin or back of the bill."

Even before this provision of the statute was enacted it was held that it was the duty of the city authorities to issue proper tax bills where there had been a failure to properly levy the assessment by mak-

ing the levy collectively against a number of pieces of land as one tract. [Everman v. Blakesley, 13 Mo. App. 407; Riley v. Stewart, 50 Mo. App. 594; Vieths v. The Planet Property and Financial Co., 64 Mo. App. 207; Lumber Co. v. Owen, 186 Mo. App. 543.] In Vieths v. The Planet Property and Financial Co., *supra,* it was stated, 1. c. 211:

"It was the duty of the city officials to issue to the plaintiff a regular and complete tax bill, and until such duty was fully performed their right of amendment within the period of limitation remained, regardless as to whether the tax bill originally issued was void or voidable, or merely imperfect in some respect."

It has been held that it is the duty of the city authorities to issue amended or new tax bills so as to correct errors in proceedings not affecting the substantial rights of the parties. [First National Bank v. Aquamsi Land Co., 70 S. W. (2d) 90; Stumpe v. City of Washington, 54 S. W. (2d) 731.] It is held in the cases cited above that the amendment or reissuance of a tax bill, where too much land has been included in one tax bill, constitutes the correction of an error not affecting such rights.

However, it is contended that the tax bills could not have been amended on February 19, 1934, so as to correct the error of including too much property, for the reason that, at that time, the original tax bills had been issued more than five years prior to the time of such amendments and whether the amendments be regarded as the issuance of new and original bills or merely amendments of the old, they were issued after the running of the Statute of Limitations.

Section 6841, as we have already indicated, provides for the correction of errors in the issuance of tax bills. It places no express limitation on the time in which such corrections may be made but it does provide, that "in any case where it becomes necessary to bring a suit to enforce the lien of any tax bill herein authorized, the lien of such tax bill shall continue until the expiration of the litigation."

It has been held that the Statute of Limitations begins to run from the date of the issuance of the original bill. [Lumber Co. v. Owen, *supra;* City of Springfield v. Eisemayer, 297 S. W. 460, 462.] It has also been held that the correction may be made after the filing of suit on the tax bill. [Galbreath v. Newton, 45 Mo. App. 312, 318]. If the act of the clerk in correcting the original tax bills and the issuance of other tax bills with the correction contained therein, is to be regarded as the issuance of new tax bills, rather than amendments of the old, they were not new bills in the sense of being different, or issued on a new basis, but they consist of merely a reissuance of the old bills in a corrected form and, in this nature, are, in fact, merely amended bills, the bills, new and old, being identical, except as to the corrections. Consequently, whether the corrections in the case at bar are to be considered strictly as amendments or the issuance of new bills, unless the period of limitation (provided in section 6841) expired prior to

the bringing of the suit, we hold the lien "continues until the expiration of the litigation." In this case, as already indicated, the suit was brought within that time.

However, it is claimed that an "examination of the alleged correction discloses that what the city clerk in fact did on June 29, 1938, was to change the substance of the resolution of the city council. What he was attempting to correct was not an error of his in making out the original tax bill, but he was in effect attempting to repeal one resolution of the city council and pass another resolution for the city council in its place." Of course, this has reference to the amendments or corrections in each of the seven tax bills to show the proceedings were under section 6843 instead of section 6841. An examination of the petition discloses that the proceedings were actually under section 6843, so we must overrule this contention of the defendants. These amendments or corrections were properly made because they do not affect the substantial rights of the parties. [Mound City v. Melvin, 205 S. W. 254; Stumpe v. City of Washington, *supra*.]

The judgment is reversed and the cause remanded. All concur.