Steven James LEISER,
Plaintiff/Respondent,

v.

CITY OF WILDWOOD,
Defendant/Appellant,

and

City of Eureka, Defendant.

No. ED 79016.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 6, 2001.

Ted F. Frapolli, Cynthia Garnholz, Frapolli, Garnholz, Garnholz & Ricci, L.C., St. Louis, for respondent.

Daniel G. Vogel, Paul V. Rost, Leslye M. Winslow, Stinson, Mag & Fizzell, P.C., St. Louis, for appellant.

Katherine Lynne Butler, Butler & Associates, Eureka, for defendant.

KATHIANNE KNAUP CRANE, J.

Defendant, City of Wildwood, appeals from the summary judgment entered in favor of plaintiff, Steven James Leiser. Plaintiff filed a five-count petition in the Circuit Court of St. Louis County, which, after amendment and as relevant to this appeal, sought a declaratory judgment that real estate which he owns and on which he operates a golf driving range is in the City

of Eureka, not in the City of Wildwood, and was subject to Section 72.424 RSMo (2000). He also sought an injunction to prevent Wildwood from exercising control over his real estate. The trial court entered summary judgment declaring that the real property "has by operation of section 72.424 RSMo (as amended 2000) been transferred to the Jurisdiction of the City of Eureka, Missouri, to the exclusion of the City of Wildwood, and that the City of Wildwood shall exercise no jurisdiction over the real property set out in exhibit one." We affirm.

The undisputed facts established by the motion for summary judgment are as follows: The City of Eureka is a city of the fourth class located within St. Louis County, Missouri with a population of 4,653. The City of Wildwood is a charter city originally incorporated in 1995 as a third class city in St. Louis County. Plaintiff owns real property (real estate) within St. Louis County, as shown by a legal description attached to the motion for summary judgment. This real estate is approximately 22.18 acres and consists of four adjacent parcels owned and operated as one piece of land. It may be fairly inferred that, prior to July 16, 1975, plaintiff's real estate was within unincorporated St. Louis County.

On July 16, 1975, the Circuit Court of St. Louis County entered a judgment of annexation in City of Eureka v. St. Louis County, Cause No. 367–885. Wildwood did not include this judgment in the record on appeal. On September 26, 2000, the circuit court entered a judgment nunc pro tunc in that case which recited that it corrected a clerical error in the legal description of the annexation area in its July 16, 1975 judgment to include that portion of plaintiff's real estate which was within the annexation area of the map depicting the annexation area. The judgment nunc pro tunc includes the legal description of a portion of plaintiff's real estate.

Initially, plaintiff attempted to transfer jurisdiction of the real estate to Eureka pursuant to section 72.424 RSMo (Cum. Supp.1999). Wildwood refused to recognize this transfer because it claimed that section 72.424 did not apply to Wildwood, Eureka, or the real estate. Plaintiff then filed his initial petition in this lawsuit. Subsequently, the legislature made an amendment to section 72.424 which was to become effective in August 2000. Section 72.424 RSMo (2000). On August 28, 2000, plaintiff notified Eureka that he intended to transfer his property to Eureka pursuant to section 72.424 RSMo (2000). Eureka passed Ordinance No. 1480 to accept jurisdiction over the real estate. Plaintiff then amended his petition to include claims under Section 72.424 as amended.

## DISCUSSION

### Standard of Review

When we consider appeals from summary judgments, we take as true all facts set forth by the affidavit or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Our review is essentially de novo, and, as such, our criteria for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law, and because the trial court's judgment is founded on the record submitted and the

law, we need not defer to the trial court's order granting summary judgment. *Id.*

### A. *Exhaustion of Remedies*

■ For its first point Wildwood contends that the trial court erred in granting plaintiff's motion for summary judgment because plaintiff failed to exhaust his administrative remedies under Wildwood's administrative review ordinance and therefore the trial court did not have subject matter jurisdiction. Wildwood claims that its Code of Administrative Procedure required plaintiff to litigate this claim before its Board of Administrative Review before he could file an action in circuit court. Wildwood relies on section 150.040(B) of this Code which mandates: "Any aggrieved party shall petition to the Board [of Administrative Review] for a review of any final decision of any City Officer, employee, board, commission or the Council. To the fullest extent permitted by law, the review procedures herein must be exhausted before any action may be filed by the court...." Wildwood argues that plaintiff is an "aggrieved party" under its code who "is seeking to force the City Council to legislatively recognize his secession from Wildwood and to thus comply with a statute he feels applicable."

Wildwood relies on *State ex rel. Maynes Constr. Co. v. City of Wildwood,* 965 S.W.2d 949 (Mo.App.1998) for the proposition that this court has upheld its administrative exhaustion requirement. However, *Maynes* involved a subdivision developer who sought to bring a court challenge to an adverse decision of Wildwood's Planning and Zoning Commission without pursuing review of the commission's decision by Wildwood's Board of Administrative Review. In that case the dispute was one for which relief was available from an administrative agency.

In contrast, in this case plaintiff sought a declaratory judgment that, as a result of a previous annexation by the City of Eureka and compliance with Section 72.424 RSMo (2000), his real estate was in the City of Eureka. The City of Wildwood has no administrative jurisdiction over plaintiff's election under section 72.424 to belong to the City of Eureka. This is not a dispute over which Wildwood or any of its agencies "is empowered to grant relief." *See Maynes,* 965 S.W.2d at 952 (quoting *Pessin v. State Tax Comm'n of Missouri,* 875 S.W.2d 143, 146 (Mo.App.1994)). Accordingly, there are no administrative remedies to exhaust. Point one is denied.

### B. *Application of Section 72.424 RSMo (2000)*

■ For its second point, Wildwood contends that the trial court erred in granting summary judgment because "as a matter of law section 72.424 RSMo (2000) does not apply to the real estate in that the real estate was not split as a result of incorporation of a municipality, was not within the City of Eureka prior to June 2000, is not a single tract of land, and is not located in a county of the first class with a charter form of government."[1]

Section 72.424 RSMo (2000) provides:

72.424. Election of municipality by owner of certain tract of land located in two municipalities

Notwithstanding any other provisions of sections 72.400 to 72.423, *any owner of a tract of land of thirty acres or less owned by a single owner and that is*

---

1. We do not condone the form of this point relied on. Separate issues should be stated in separate points relied on. *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 674 (Mo.App.1995). Further, issues not encompassed by the point relied on and raised only in the argument portion of the brief are not properly preserved for review. *Id.* at 678.

*located within two or more municipalities*, one municipality being a city of the fourth classification with a population between four thousand six hundred and five thousand, and the other municipality being a constitutional charter city with a population between sixteen thousand three hundred and seventeen thousand, and both municipalities located within a *county of the first classification having a charter form of government* and having a minimum population of nine hundred thousand, may elect which municipality to belong to by agreement of that municipality. Such owner's election shall occur within ninety days of August 28, 2000. Such agreement shall consist of the enactment by the governing body of the receiving municipality of an ordinance describing by metes and bounds the property, declaring the property so described to be detached and annexed, and stating the reasons for and the purposes to be accomplished by the detachment and annexation. A copy of said ordinance shall be mailed to the county clerk and to the city clerk and assessor of the contributing municipality before December fifteenth, with such transfer becoming effective the next January first. Such choice of municipalities shall be permanent. Thereafter, all courts of this state shall take notice of the limits of both municipalities as changed by the ordinances. This section shall only apply to boundary changes effected after January 1, 1990, and occurring by the incorporation of a municipality. This section shall expire and be of no force and effect on March 1, 2001.

(emphasis added).

■ Wildwood first argues that the real estate was not split as a result of incorporation because no part of the real estate was in Eureka prior to June, 2000. The order nunc pro tunc makes clear that a portion of the real estate was annexed by Eureka as of July 26, 1975. An order nunc pro tunc corrects a clerical error and relates back to the original judgment. *Pirtle v. Cook*, 956 S.W.2d 235, 241 (Mo. banc 1997). As a result, a portion of the real estate was in Eureka as of the 1975 judgment.

■ Wildwood next contends that section 72.424 does not apply to the real estate because the real estate is not a single tract of land, but is four parcels. The legal description of the real estate shown on Exhibit 1 attached to the petition and the motion for summary judgment describes the real estate as made up of four parcels. Section 72.424 provides that it applies to "any owner of a tract of land of thirty acres or less owned by a single owner." Section 72.424 RSMo 2000. At issue is the meaning of a "tract" of land. "Tract" is not defined in this statute.

■ Wildwood has not cited and we have not found any case that holds that a "tract" of land cannot be made up of several parcels. Rather, "tract" has a very broad meaning that can include one or more parcels or lots. In the absence of statutory definitions, we give the words used in statutes their plain and ordinary meaning with help, as needed, from the dictionary. *American Healthcare v. Director of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999). The dictionary definitions of "tract" are very broad and not consistent. Webster's Third New International Dictionary Unabridged defines "tract," when applied to land, as "an area either large or small: as a(1): a region or stretch (as of land) that is usu. indefinitely described or without precise boundaries ... (2): a precisely defined or definable area of land." Webster's Third New International Dictionary 2421 (3d ed.1993). These definitions are not particularly helpful on this question, but, in any case, would

not prevent a "tract" from being made up of parcels.

■ We may also look at prior legislative and judicial meanings given to "tract." When the legislature enacts a statute referring to terms which have had other judicial or legislative meanings attached to them, we presume that the legislature acted with knowledge of that judicial or legislative action. *Citizens Elec. Corp. v. Dept. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989). "Contiguous tract of land" has been legislatively defined to mean "adjacent land ... which is under the control of or owned by the permit holder and operated as a single enterprise." Section 643.079.8 RSMo (2000). A "tract" of land has been judicially defined as a "contiguous body of land embraced in one deed." *Schofield v. Harrison Land & Mining Co.*, 187 S.W. 61, 64 (Mo.1916). "Tract," as used in a taxing ordinance, has been held to be equivalent to a "parcel of land whether it be a lot, a piece, or various lots or pieces which have been made one tract or parcel by the use made of them by their owners." *Clay County Bank v. Health Culture Co.*, 234 Mo.App. 1142, 139 S.W.2d 1049, 1053 (1940). In *Kroeger v. Bohrer*, 116 Mo.App. 208, 91 S.W. 159, 161 (1905), we defined a farm as a "tract devoted to cultivation under a single control, whether it be large or small, isolated or made up of many parcels."

From these definitions we conclude that the unity created by the ownership, control, or use of contiguous pieces of land may establish it as a "tract" as that term is used in the statute. Plaintiff's real estate shown on Exhibit 1, which consists of four adjacent parcels, is a "tract" of land within the purview of section 72.424 RSMo (2000).

Wildwood's last contention under this point is that section 72.424 RSMo (2000) does not apply to plaintiff's real estate because St. Louis County is not a county of the first class with a charter form of government pursuant to Article VI, section 18(a) of the Missouri Constitution.

■ Section 72.424 RSMo (2000) applies to land located in municipalities "within a county of *the first classification* having a charter form of government and having a minimum population of nine hundred thousand ...." Section 72.424 RSMo (2000) (emphasis added). St. Louis County has a charter form of government pursuant to Article VI, section 18(a) of the Missouri Constitution and has a population over nine hundred thousand, but it is not a county "of the first classification." That is because Art VI, section 18(a), as amended in 1995, provides: "Counties which adopt or which have adopted a charter or constitutional form of government shall be a separate class of counties outside of the classification system established under section 8 of this article."

As written, with the inclusion of the words "of the first classification," section 72.424 would not apply to any county in Missouri because no county in Missouri can be a county of the first class and have a charter form of government. Because the inclusion of these words creates an absurd law, incapable of being enforced, we may strike this phrase as being improvidently inserted.

■ In construing a statute, our goal is to give effect to the intent of the legislature. *Sisco v. Bd. of Trus. of Police Retire. Sys.*, 31 S.W.3d 114, 118 (Mo.App. 2000). "It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998) (quoting

*State ex rel. Md. Heights v. Campbell,* 736 S.W.2d 383, 387 (Mo. banc 1987)). We will not interpret a statute or ordinance so as to reach an absurd result contrary to its clear purpose. *Id.* We will ignore language which has been clearly inadvertently included in legislation contrary to its clear purpose. *Id.*

> Acting on the presumption that the legislature never intends to enact an absurd law, incapable of being enforced, and on the principle that the reason of the law should prevail over the letter of the law, courts on numerous occasions, confronted with ambiguous or contradictory language, have adopted a construction which modifies the literal meaning of the words, or in extreme cases have stricken out words or clauses regarded as improvidently inserted, in order to make all sections of a law harmonize with the plain intent or apparent purpose of the legislature.

*City of Joplin v. Joplin Water Works Company,* 386 S.W.2d 369, 373–74 (Mo. 1965). *See also Bank of Belton v. State Banking Bd.,* 554 S.W.2d 451, 456–57 (Mo. App.1977).

In *State ex rel. McClellan v. Godfrey,* 519 S.W.2d 4 (Mo. banc 1975), the supreme court construed a statute that applied to "any county of the first class composed entirely of a city with a population of more than six hundred thousand." *Id.* at 8. The inclusion of the words "of the first class" made the statute inapplicable to any governmental unit. The court held:

> Absent the words 'of the first class,' it is obvious that the legislative intent was to specify the city of St. Louis. We can take judicial notice, as we do, that there is only one geographic area in the state performing county functions having the characteristics listed. That, of course, is

the city of St. Louis; and, there is nothing apparent to suggest that a comparable governmental area will be created in the foreseeable future. Furthermore, common sense dictates that the legislative objective of upgrading the investigative aspects surrounding unusual deaths would not have been denied the most populated area in the state. The Act itself indicates as much. With the legislative intent so clear, are we to ignore or defeat the same because of the erroneous designation of the city of St. Louis as a first class county? We are not legally compelled to do so nor do we believe it desirable to do so.

*Id.*

Likewise, we will not defeat section 72.424 because of the erroneous inclusion of "county of the first classification." To effect the intent of the legislature and to avoid an illogical and absurd result, we excise the words "of the first classification" in section 72.424 as improvidently included. *See Bank of Belton,* 554 S.W.2d at 457.

For all of the above reasons, point two is denied.

## C. Existence of Factual Disputes

 For its third point, Wildwood contends that material issues of fact remain with respect to whether "the real estate at issue was ever partially within the City of Eureka at the time Eureka attempted to annex the real estate; whether the real estate is a single tract of land; and whether the real estate was split as a result of the incorporation of a municipality and whether the nunc pro tunc order was valid."[2] This point recasts the legal issues decided under points one and two as factual disputes and has no merit.

Wildwood first argues that movant did not establish that the real estate was ever

---

**2.** We do not condone the form of this point relied on. *See supra* note 1.

in Eureka and thus located within two municipalities. A portion of the real estate was annexed by Eureka as shown by the corrected judgment in City of Eureka v. St. Louis County, Cause No. 367–885.

Wildwood next contends a dispute exists about whether or not movant owned a "tract" because it introduced evidence that the Real Estate is four parcels of land, not a single tract. As a matter of law, as we have already set out, the real estate is in fact a "tract" of land under the statute.

■ Wildwood also argues that issues of material fact exist about whether the 1975 judgment and its correction nunc pro tunc are valid. This issue is not preserved for review. Wildwood did not raise this claim in the summary judgment proceedings in the trial court and has not included the 1975 judgment in City of Eureka v. St. Louis County in the record on appeal and, for each of these reasons, has not preserved this issue for review. *Ibarra v. Missouri Poster & Sign Co.*, 838 S.W.2d 35, 40–41 (Mo.App.1992); *American Exp. Travel Related Servs. v. Mace*, 26 S.W.3d 613, 615 (Mo.App.2000). Point three is denied.

### D. Denial of Wildwood's Motion for Summary Judgment

■ For its fourth point, Wildwood contends that the trial court erred in denying Wildwood's own motion for summary judgment. We do not reach the merits of this point because the denial of a motion for summary judgment is not a final order, *L.C. Development Co., Inc. v. Lincoln County*, 26 S.W.3d 336, 338 (Mo.App.2000), and is not appealable. *Lake Center Boatworks, Inc. v. Martin*, 804 S.W.2d 842, 844 (Mo.App.1991). This rule applies with equal vigor to situations, such as this, where the order denying summary judg-

ment to one party is entered at the same time as an appealable order granting summary judgment to the other party. *Id.* Point four is denied.

### E. Affirmative Defenses

For its fifth point, Wildwood contends that the grant of summary judgment was improper because Wildwood asserted two affirmative defenses, plaintiff's failure to exhaust his administrative remedies and the unconstitutionality of section 72.424 RSMo (2000), which precluded summary judgment because plaintiff failed to establish the non-viability of those defenses.

■ Where the non-movant has raised an affirmative defense, a claimant's right to summary judgment depends just as much on the *non-viability* of that affirmative defense as it does on the viability of the claimant's claim. *ITT*, 854 S.W.2d at 381. However, the affirmative defense must have been properly pleaded. An affirmative defense or avoidance must be set forth in a pleading that contains "a short and plain statement of the facts showing that the pleader is entitled to the defense of avoidance." Mo. R. Civ. P. 55.08. The factual basis for defenses must be set out in the same manner that is required for pleading claims. *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 938 (Mo.App.1996). Wildwood failed to properly plead either of the matters it styled as affirmative defenses.

Wildwood pleaded exhaustion of administrative remedies in the following language.

2. Plaintiff has failed to exhaust the administrative remedies provided by the City of Wildwood and this Court lacks subject matter jurisdiction and Plaintiff's Second Amended Complaint should

be dismissed. Wildwood Ordinance sections 150–010–150–110 (the Code of Administrative Procedure) applies to such a claimed unlawful action by any City Officer, employee, board, commission, or the Council and creates a mandatory exhaustion requirement. That requirement mandates that "any aggrieved party shall petition to the Board [of Administrative Review] for a review of any final decision of any City Officer, employee, board, commission or the Council. To the fullest extent permitted by law, the review procedures herein must be exhausted before any action may be filed in any court . . . ." Section 150.030 and section 150.040B.

This paragraph merely sets out Wildwood's legal conclusion that this dispute is subject to its Code of Administrative Procedure. It does not set out any facts showing why or how this dispute is one over which Wildwood is empowered to grant administrative relief.

Wildwood pleaded unconstitutionality as an affirmative defense in the following language:

3. [I]f the provisions of section 72.424 are interpreted as sought by Plaintiff, it would constitute unlawful special legislation in violation of Article III, Sections 40(15), (22), (28), and (30) of the Missouri Constitution among other provisions, and as interpreted would not be lawful or rationally justified.

4. In the alternative, Plaintiff's claims pursuant to section 72.424 are barred because this provision was purportedly enacted in violation of the Missouri Constitution because the subject of the bill is not clearly expressed in its title, in violation of Article III, section 23; the bill contains more than one subject, in violation of Article III, section 3; and was amended so as to change its original purpose, in violation of Article III, section 21.

The party challenging the constitutionality of a statute must plead facts to rebut the presumption of constitutionality. *State ex rel. Kenosha Auto Transp. v. Flanigan,* 349 Mo. 54, 159 S.W.2d 598, 599 (banc 1942). " 'And it is not sufficient that certain sections of the Constitution be set out and the assertion made that rights of appellant thereunder have been violated, but the facts which constituted such violation must be set out.' " *Id.* (quoting Houts, Missouri Pleading and Practice, Annotated, vol. 2, Section 484, p. 237). " 'A complaint in a suit to enjoin the enforcement of a regulation made in the exercise of the police power is not rendered sufficient by allegations which are merely general conclusions of law or fact, but must set forth the facts relied upon to rebut the presumption of constitutionality.' " *Id.* (quoting 11 Am.Jur. section 126, p. 774). Here, Wildwood merely pleads conclusions that the legislation violated prohibitions expressed in certain sections of the constitution. Wildwood does not allege any facts establishing the alleged violations.

A summary judgment movant is not required to negate conclusory allegations in its motion; otherwise, it would first have to make the non-movant's case and then defeat it. *Trotter's Corp.,* 929 S.W.2d at 938. Because Wildwood did not properly plead either of the matters it styled as affirmative defenses, plaintiff was under no obligation to establish the non-viability of those defenses in its motion for summary judgment. Point five is denied.

The judgment of the trial court is af-

firmed.[3]

WILLIAM H. CRANDALL, Jr., P.J. and ROBERT G. DOWD, Jr., J. concur.

**3.** Wildwood's Prebriefing Motion to Transfer this appeal to the Missouri Supreme Court is denied.