

# In the Missouri Court of Appeals

## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| IN THE INTEREST OF: L.C., | ) | No. ED102694 |
| a minor child. | ) | |
| | ) | Appeal from the Circuit Court |
| JUVENILE OFFICER, TWENTY- | ) | of the City of St. Louis |
| SECOND JUDICIAL CIRCUIT, | ) | |
| Respondent, | ) | Hon. David C. Mason |
| vs. | ) | |
| | ) | |
| MISSOURI DEPARTMENT OF SOCIAL | ) | Filed: |
| SERVICES, CHILDREN'S DIVISION, | ) | November 24, 2015 |
| Appellant. | ) | |

The Children's Division of the Department of Social Services ("the Division") appeals from the trial court's judgment mandating that the Division provide all benefits and services to Cassandra Owens as would normally be given to a licensed foster care provider. We reverse and remand.

The juvenile court entered an order of temporary protective custody with respect to LC. Shortly thereafter, the juvenile court held a protective custody hearing, at which it determined L.C. was to remain within the court's jurisdiction and in the legal custody of the Division.

Subsequently, the juvenile officer filed a first amended petition regarding L.C., which sought to have the court enter any orders, judgments, or decrees as may be found necessary in the best interest of L.C. The first amended petition alleged that "said juvenile comes within the provisions of Section 211.031.1(1)" because she was residing with her paternal grandmother, Owens, when the case began. In addition, the petition stated L.C. would be at risk of neglect if

she were returned to the custody of her mother at that time. L.C.'s father was incarcerated and was, as a result, unable to care for L.C.

The court held a hearing on the juvenile officer's first amended petition and determined L.C. was "without proper care, custody or support and, therefore, is a Juvenile[] within the provisions of Section 211.031.1." Thus, the court found it was in L.C.'s best interests to remain in protective custody and be in the legal custody of the Division. The court also noted Mother was not an appropriate custodian for L.C. and that Father also was not an appropriate custodian.

The court then entered an order and judgment of disposition in which it ordered that legal custody of the L.C. shall be granted to the Division for appropriate placement and that placement with Owens is an appropriate physical placement. In this ruling, the court also ordered the Division to comply with the specific orders on Exhibit C. In Exhibit C, the court ordered the Division to, among other things, "license Owens once traffic matters are cleared up."

The Division filed a motion to modify the court's order and judgment of disposition. In particular, the Division requested that the court rescind the provision of its judgment ordering the Division to license Owens. The Division also filed a motion to rehear this issue, which was granted.

At the hearing on the motion to modify, the Division established that Owens had previously applied for foster care licensure and had her application refused. Owens did not file a petition for judicial review of the Division's denial.

In its subsequent judgment, the court found the Division had previously denied a license to Owens on grounds that the court found were arbitrary, capricious, and an abuse of discretion. However, the court noted it did not have discretion to order the Division to issue such a license no matter how unfounded the denial, unless an appropriate administrative review had been filed

2

by Owens. The Division also found that, at this point, because she did not appeal the denial of her foster care license, Owens does not have an adequate remedy at law to redress the denial of a foster care license. The court noted, however, that it retained the authority to order that necessary services be provided. The court held that placement with Owens under Section 210.565 is in L.C.'s best interests and it was necessary for L.C.'s welfare for services to be provided to L.C. and Owens as if Owens was a licensed child care provider. Thus, the court ordered the Division to provide such services as the failure of Owens to receive these necessary services would render this ruling meaningless. In conclusion, the court ordered that "it [was] in the best interests of [L.C.] that the [Division] shall provide all benefits and services to [Owens], as caretaker of [L.C.] herein, as would normally be given to a licensed foster care provider." This appeal follows.

Before addressing the merits of the appeal, we note the parties disagree on whether the Division has standing to appeal the judgment here. We must address this question before we can address the merits of the appeal.

The juvenile officer asserts the Division does not have standing because, according to Rule 120.01(a), appeals from juvenile court proceedings are allowed as provided by statute. Section 211.261.1, the statute allowing appeals from juvenile court proceedings, provides in pertinent part:

> An appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parent, guardian, legal custodian, spouse, relative or next friend. An appeal shall be allowed to a parent from any final judgment, order or decree made under the provisions of this chapter which adversely affects him. An appeal shall be allowed to the juvenile officer from any final judgment, order or decree made under this chapter . . ..

3

Section 211.261.21 provides an avenue to appeal from a juvenile court judgment. Because it does not include a provision allowing the Division to appeal, the juvenile officer is correct to point out the Division has no standing to bring the immediate appeal under Section 211.261. In the Interest of D.T. and L.T., 248 S.W.3d 74, 77 (Mo. App. W.D. 2008).

However, we must also consider whether or not the Division may have standing to appeal pursuant to Section 512.020. Id. Section 512.020 provides "Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any . . . final judgment in the case." Thus, for the Division to have standing, we must conclude, among other things, that it was an aggrieved party.

A party is "aggrieved" when the judgment operates prejudicially and directly on his personal or property rights or interest. In re Knichel, 347 S.W.3d 127, 130 (Mo. App. E.D. 2011). To be an aggrieved party, an appellant must possess a pecuniary interest adversely affected by the probate court's final judgment. Id. at 131. The Division was a party to the suit as the legal custodian of L.C. Further, the Division was ordered to provide all benefits and services to Owens as caretaker of L.C. as would normally be given to a licensed foster care provider. As a result, we find the Division was an aggrieved party and has standing to appeal the judgment of the juvenile court. We now turn to the merits of the Division's appeal.

The standard of review is the same as any other court-tried civil case, under which we reverse only if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. In re W.B., 162 S.W.3d 517, 522 (Mo. App. W.D. 2005). Questions of law are reviewed de novo. Id.

4

Because we find the Division's second point to be dispositive, we address it first. In its second point, the Appellant argues the juvenile court erred in mandating that the Division provide all benefits and services to Owens as would normally be given to a licensed foster care provider because the court lacks statutory authority to require that the Division provide such benefits and services to Owens in that Owens has been refused foster care licensure and is ineligible to receive state and federal funds for providing child care pursuant to Section 210.025.3(2).[1]

The Division maintains a procedure for licensing foster care providers to ensure children are kept in safe and nurturing environments. Section 210.025.3(2) provides: "Upon receipt of an application for state or federal funds for providing child-care services in the home, the family support division shall: . . . (2) [d]etermine if the applicant or any person over the age of seventeen who is living in the applicant's home has been refused licensure or has experienced licensure suspension or revocation pursuant to [S]ection[s] 210.221 or 210.496."

In construing a statute, our goal is to give effect to the intent of the legislature. Leiser v. City of Wildwood, 59 S.W.3d 597, 603 (Mo. App. E.D. 2001). It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible. Id. Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature. Id. We will not interpret a statute or ordinance so as to reach an absurd result contrary to its clear purpose. Id. at 604.

The Division argues that because Owens applied for a foster care license and was refused and did not appeal the refusal, the Division is prohibited from expending state or federal funds for Owens's care of L.C. The juvenile officer essentially contends the term "child-care services" in Section 210.025 is ambiguous and is not meant to include foster care, which is the situation

---

[1] We note that even though Owens lacks licensure, all parties agree she is a suitable foster placement for L.C.

5

here, but rather is intend to cover only those providing "daycare." As a result, the juvenile officer argues Section 210.025 is inapplicable to this case.

If we were to accept the juvenile officer's argument as true, we would be saying the legislature intended to prohibit public funding for care of children in a daycare setting where the provider does not have a license, but that it intended to allow public funding in a foster care setting for those providing care of children without a license. This result would be contrary to the clear intent of the legislature in enacting Section 210.025. The legislature's intent is made clear by the fact that Section 210.025.3(2) references Section 210.496, which is the licensing statute for foster homes. Thus, in doing so, the legislature made clear that it intended to prohibit public funding for the care of children in foster homes that are not licensed.

Therefore, we find the juvenile court erred in mandating that the Division provide all benefits and services to Owens as would normally be given to a licensed foster care provider because the court lacks statutory authority to require that the Division provide such benefits and services to Owens in that Owens has been refused foster care licensure and is ineligible to receive state and federal funds for providing child care pursuant to Section 210.025.3(2). Point granted.

Because the Division's second point is dispositive, we need not address its first point. The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

ROBERT G. DOWD, Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

6