

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: B.D., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD84811 |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | Opinion filed: May 10, 2022 |
| SOCIAL SERVICES, CHILDREN'S | ) | |
| DIVISION, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE JALILAH OTTO, JUDGE**

Division Two: Alok Ahuja, Presiding Judge,
Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

The Missouri Department of Social Services, Children's Division ("Children's Division"),

appeals from the judgment of the Family Court Division of the Circuit Court of Jackson County

("juvenile court") ordering the Children's Division to facilitate B.D.'s[1] re-entry into the foster care

system and to provide her with financial assistance and other services made available under a

federal law expanding foster care benefits during the Covid-19 pandemic. We reverse and remand.

---

[1] We use initials to identify the Respondent in this case pursuant to section 211.321, RSMo.

Unless otherwise noted, statutory references are to the Missouri Revised Statutes (2020).

**Factual and Procedural Background**

B.D. entered foster care in October 2013, when she was fourteen years old. She remained in the foster care system until she reached the age of twenty-one on September 1, 2020, at which point she aged out of the program.

On December 27, 2020, Public Law 116-260, the "Supporting Foster Youth and Families through the Pandemic Act" ("the Federal Act") became law. The Federal Act allowed, among other things, for a person who had been discharged from the foster care system due to age to voluntarily re-enter and receive assistance and services during a defined period due to the Covid-19 pandemic. On April 6, 2021, B.D. filed a petition in the juvenile court seeking an order returning her to the foster care system together with all applicable benefits and services. The petition additionally included a declaratory judgment count seeking a declaration that the Children's Division was required, under the Federal Act, to permit B.D.'s re-entry into the foster care system and to restore all assistance, including financial benefits, she was receiving prior to aging out of foster care. The petition was filed in B.D.'s interest, but did not name any other persons or entities as parties. A family court commissioner issued an order *sua sponte* denying B.D.'s petition for lack of jurisdiction.

On April 21, 2021, B.D. filed a motion for rehearing under Rule 130.13.[2] On April 28, 2021, the juvenile court, acting through the circuit judge assigned to the Family Court Division, ordered the Children's Division to "file a timely response" to the motion for rehearing. The juvenile court set a hearing on B.D.'s motion for June 1, 2021, and a summons was issued to the

[2] B.D. originally filed a motion for rehearing on April 20, 2021; however, because the motion was filed before the order denying her petition was entered, B.D. filed a second motion for rehearing the following day. We address only the second motion for rehearing.

Rule references are to the Missouri Supreme Court Rules (2020).

Children's Division to appear before the juvenile court on that date. The June 1st hearing consisted only of arguments from counsel for B.D. and the Children's Division; no testimony was presented, and no exhibits were formally received by the juvenile court. On August 13, 2021, the juvenile court entered its judgment that ordered the Children's Division to facilitate B.D.'s re-entry into the foster care system and to provide her with all applicable benefits and services. The Children's Division appeals.

## Discussion

The Children's Division raises four points on appeal. In its first two points, the Children's Division asserts procedural errors, arguing that the juvenile court denied it the opportunity to adequately respond to and address the merits of B.D.'s allegations in violation of its due process rights and that the juvenile court erred by entering judgment after failing to rule on B.D.'s motion for rehearing within forty-five days of its filing, asserting that the motion was deemed overruled at that point by operation of Rule 130.13 and therefore the "original judgment denying B.D.'s [p]etition must stand." In its third and fourth points, the Children's Division claims the juvenile court erred in awarding benefits and services to B.D., arguing that she was ineligible to receive those benefits under Missouri law and that the Federal Act did not mandate Missouri to provide foster care benefits to individuals who had aged out of the foster care system. Before we can consider these claims of error, however, we must address B.D.'s argument that this Court lacks jurisdiction to hear the Children's Division's appeal.

### *Jurisdiction*

This Court "'has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it.'" *L.L. v. D.L.*, 607 S.W.3d 206, 208 (Mo. App. W.D. 2020) (quoting *Glasgow Sch. Dist. v. Howard Cnty. Coroner*, 572 S.W.3d 543, 547 (Mo. App. W.D.

3

2019)). "'The right to appeal is purely statutory and where a statute does not give a right to appeal, no right exists.'" *Id.* (quoting *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 399 (Mo. banc 2016)).

At the outset, we must acknowledge the unique nature of this case. In one sense, this action has the earmarks of a standard juvenile court action seeking the placement of an individual in the foster care system. However, due to B.D. having previously aged out of the Missouri foster care system, this is not a typical proceeding. Indeed, it is undisputed that, based solely on Missouri law, B.D. was not entitled to re-enter the foster care system due to her age. As a result, the theory put forth in B.D.'s petition turns on a federal law enacted in December of 2020, the applicability of that law to the State of Missouri, and, if applicable to the State of Missouri, the impact of the federal law on B.D.'s ability to re-enter the foster care system despite having aged out. Further compounding the procedural quirks presented by this case is the inclusion of a declaratory judgment count in the petition.

In claiming that the Children's Division is not entitled to appeal the juvenile court's judgment, B.D. argues that the Children's Division was not a party to the underlying action and, even if it were, the Children's Division is not a party permitted to appeal from a juvenile court judgment under section 211.261, RSMo.[3] We first observe that the definition of "party" applicable to juvenile court proceedings specifically encompasses "the children's division in any case in which the division provides services to the juvenile[.]" Rule 110.04.a(20). Regardless, the Children's Division's exclusion from the list of parties permitted to appeal from a juvenile court

---

[3] Section 211.261, RSMo states that an appeal in a juvenile case "shall be allowed" to the following persons after "any final judgment, order or decree made under the provisions of [chapter 211:]" 1) the child or the child's parent, guardian, legal custodian, spouse, relative or next friend on the child's behalf; 2) a parent, if adversely affected by the judgment; and 3) the juvenile officer. § 211.261.1, RSMo. In addition, section 211.261.2, permits the juvenile officer and a parent or guardian *ad litem* to appeal in other circumstances.

judgment under section 211.261, RSMo, is of no consequence. Pursuant to section 512.020(5), RSMo, "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any…[f]inal judgment in the case." The Children's Division is clearly aggrieved by the judgment of the juvenile court as the Children's Division was ordered to facilitate B.D.'s re-entry into the foster care system and to provide financial assistance and services to her. As a result, the Children's Division is authorized to bring this appeal. *See In Interest of L.C.*, 477 S.W.3d 171, 174 (Mo. App. E.D. 2015) (stating that the Children's Division was aggrieved in a case where it was ordered to pay benefits and services to a juvenile's caretaker and thus had standing to appeal under section 512.020, RSMo, even though the Children's Division had no standing to bring the appeal under section 211.261, RSMo).

*Point II - Juvenile Jurisdiction under Rule 130.13*

Having determined that we have jurisdiction, we turn first to the Children's Division's second point on appeal in which it argues that B.D.'s motion for rehearing was deemed denied by operation of Rule 130.13 after the juvenile court failed to rule on it within forty-five days of its filing and, as a result, the subsequent judgment granting B.D. relief must be vacated and the "[c]ircuit [c]ourt's original judgment denying B.D.'s [p]etition must stand."

We note that the Children's Division's effort to have the "original judgment" reinstated is fundamentally flawed for a simple reason – there was no "original judgment." Due to the unusual procedural path taken by this case, the juvenile court never confirmed the commissioner's order denying B.D.'s petition; and, therefore, the commissioner's order never became the judgment of

the juvenile court. Thus, the only judgment entered by the juvenile court in this case is the judgment now before us on appeal.

Next we address B.D.'s motion for rehearing itself. The motion explicitly referenced Rule 130.13; a rule applicable to juvenile court proceedings initially heard by a family court commissioner. Under Rule 130.13, a motion for rehearing is deemed denied if not ruled on within forty-five days of filing. *See* Rule 130.13(b) ("The judge shall rule on the motion for rehearing promptly. If the motion for rehearing is not ruled on within 45 days after the motion is filed, it is overruled for all purposes."). However, B.D.'s reference to Rule 130.13 in her motion for rehearing was misplaced because such motions are filed ***after*** a judgment has been entered; and, as previously stated, the juvenile court had not yet entered a judgment. Similarly, the Children's Division's effort on appeal to offensively use Rule 130.13 to vacate the juvenile court's judgment and reinstate the non-existent "original judgment" perpetuates one of the many misunderstandings that has permeated this action.

Commissioners are authorized to hear juvenile matters. § 487.040.1, RSMo ("[T]he judge of the family court may direct that any case or class of cases may be heard by the commissioner in the manner provided for hearing of cases by law"). After hearing a matter, the commissioner "shall transmit to the administrative judge or such other judge as shall be designated by the administrative judge all papers relative to the proceedings or case, together with the commissioner's findings and recommendations in writing." Rule 130.08. Once the judge receives the commissioner's findings and recommendations, "the judge shall either adopt, as transmitted, amended or modified, or reject the findings and recommendations of the commissioner." Rule 130.09(a). "If the judge adopts the findings and recommendations of the commissioner, the judge shall enter a judgment of the circuit court." Rule 130.09(b). However, "[i]f the judge rejects the findings and recommendations of the

6

commissioner, the judge shall schedule a hearing de novo before the judge[,]" and "[a]fter the hearing, the judge shall enter a judgment of the circuit court." Rule 130.09(c).

Relevant to the issue before us, it is only *after* entry of a judgment by the circuit court that a party may file a motion for rehearing pursuant to Rule 130.13. *D.W. v. J.O.*, 476 S.W.3d 298, 301 (Mo. App. E.D. 2015) ("The rule does not contemplate that a party may request a rehearing before a circuit court judge *prior* to judgment being entered. Rather, the motion for rehearing before a circuit court judge is not due under the rule until *after* the . . . entry of judgment by the circuit court").

The motion for rehearing in this case was filed prior to any judgment having been entered by the juvenile court. As a result, the motion was not filed under Rule 130.13, the forty-five day window contained in Rule 130.13 was not triggered, and the Children's Division's effort to use Rule 130.13 to attack the juvenile court's judgment is misplaced.

Point II denied.

*Point III – Section 211.036, RSMo*

In its third point on appeal, the Children's Division argues that the juvenile court erred by "asserting jurisdiction and authority to enter an order and judgment under § 211.036 ordering…B.D.'s re-entry into foster care[,]" claiming that section 211.036, RSMo, only permits "youth under the age of twenty-one" to petition for re-entry into the foster care system and, as a twenty-two-year-old, B.D. did not fall within the reach of that statute. We agree.

In its judgment, the juvenile court explicitly relied on section 211.036, RSMo, as a basis to grant B.D. her requested relief. While the judgment quotes multiple parts of the statute, it notably overlooks the language in section 211.036.1, RSMo, that places an age cap on those who can seek re-entry into the foster care system. Section 211.036.1, RSMo, states, in pertinent part,

7

> If a youth under the age of twenty-one is released from the custody of the children's division and after such release it appears that it would be in such youth's best interest to have his or her custody returned to the children's division, the juvenile officer, the children's division or the youth may petition the court to return custody of such youth to the division until the youth is twenty-one years of age.

*See also* § 211.036.3 ("For purposes of this section, a 'youth' is any person eighteen years of age or older and under twenty-one years of age who was in the custody of the children's division in foster care at any time in the two-year period preceding the youth's eighteenth birthday").'"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.'" *State Conf. of Nat'l Ass'n for Advancement of Colored People v. State*, 563 S.W.3d 138, 150 (Mo. App. W.D. 2018) (quoting *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 430 (Mo. banc 2016)). "If the statutory language is unambiguous, we 'must give effect to the legislature's chosen language.'" *Id.* (quoting *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 461 (Mo. banc 2013). "We presume every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language." *Id.* (citing *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 809 (Mo. banc 2017)).

The plain language of section 211.036.1, RSMo, provides a pathway to foster care re-entry only to those individuals who were previously released from the custody of the Children's Division prior to reaching the age of twenty-one and, for those who are permitted to re-enter foster care under this provision, the return to foster care is capped at "twenty-one years of age." Section 211.036, RSMo, simply does not provide a mechanism for an individual who has reached their twenty-first birthday to re-enter foster care. B.D. tacitly acknowledges this by arguing that the Federal Act "extends the authority of the [juvenile court] under § 211.036 to return former foster youth into care." While the Federal Act may extend Missouri's ability to permit individuals who

8

had passed their twenty-first birthday to return to foster care and, indeed, may ultimately be found to require Missouri to extend such opportunities to those individuals, the authority to do so is not found in section 211.036, RSMo. There is nothing in this statutory provision that authorizes an individual over the age of twenty-one to petition for re-entry into the foster care system, and the juvenile court's reliance on that provision as a basis of authority to order B.D.'s re-entry into foster care was in error.

Point III is granted.

*Point I – Denial of Children's Division's Procedural Rights*

While we have concluded that section 211.036, RSMo, does not authorize the juvenile court to order individuals over age twenty-one to be re-admitted to the foster care system, this determination does not fully resolve the broader issue raised in B.D.'s petition concerning the impact of the Federal Act on those individuals. However, before we can embark on an effort to address that question, we must address the Children's Division's argument that it was denied a meaningful opportunity to fully respond to the allegations in B.D.'s petition, due to the juvenile court's failure to adhere to applicable procedural rules.

The genesis of the Children's Division's complaint can be traced back to the petition itself. While a petition seeking to re-enter foster care is an action traditionally litigated in juvenile court under the rules specific to juvenile proceedings, the declaratory judgment count included in B.D.'s petition is of a different sort. The inclusion of a count subject to the rules applicable to juvenile proceedings alongside a declaratory judgment count that clearly is not produced a truncated process that failed to embrace the procedural requirements contained in ***both*** the juvenile court rules and the general rules of civil procedure applicable to a declaratory judgment action.

*A. Failure to Follow Applicable Juvenile Court Rules*

As explained in our discussion of Point II, B.D. filed a motion for rehearing immediately upon

issuance of the order by the family court commissioner denying B.D.'s petition for a lack of jurisdiction. This motion (purportedly filed under Rule 130.13) served as a catalyst propelling this case in an unfortunate procedural direction. While the judgment ultimately entered by the juvenile court can fairly be characterized as a rejection of the commissioner's order, Rule 130.09(c) does not permit the juvenile court to implicitly reject a commissioner's order by simply entering a contrary judgment. Instead, the juvenile court must first reject a commissioner's decision and is then required to schedule a hearing *de novo*. Under such a scenario, the juvenile court may enter its judgment only after it has held the hearing *de novo*. In this case, the juvenile court neither communicated its rejection of the commissioner's order nor did it schedule or conduct a hearing *de novo*. Rather, the juvenile court held a hearing on B.D.'s motion for rehearing that seemingly morphed into a *de facto* bench trial on the merits, without any indication in the order setting the hearing that the juvenile court had rejected the commissioner's order or that the June 1st proceeding was the hearing *de novo* required by Rule 130.09(c).

The rules applicable to juvenile proceedings clearly require the juvenile court to hold a "hearing *de novo*" **after** it rejects the order of a commissioner. The Children's Division was not afforded that opportunity to address the merits of B.D.'s petition.

### B. Failure to Follow Rules Applicable to a Declaratory Judgment Action

The procedural missteps outlined above were exacerbated by the inclusion of a declaratory judgment count in B.D.'s petition. A declaratory judgment action is not subject to the procedures applicable to juvenile proceedings[4] but rather is an action created by chapter 527, RSMo, and it is procedurally governed by the broader rules of civil procedure applicable to all civil actions. Thus, in addition to numerous other procedural safeguards, the Children's Division was entitled to file

---

[4] *See* Rule 110.01 (specifying that Rules 110 to 129 apply to proceedings "in the juvenile court and family court divisions of the circuit court" under statutory provisions found in chapters 210 and 211, RSMo).

an answer to the petition and formally assert defenses. Under the unusual route taken by this case, the Children's Division was never provided the opportunity to file any responsive pleading to the petition, formally assert defenses, and, to the extent necessary, develop an evidentiary record.

Notably, B.D.'s own Motion for Rehearing recognized that, if the juvenile court did not order her return to the foster care system pursuant to section 211.036, RSMo, then the court should grant rehearing "by entering an order transferring this matter to a division of the circuit court with authority to consider [B.D.]'s claim for declaratory [and] injunctive relief on the merits." As we have explained above, B.D. was not entitled to seek re-entry into the foster care system by invoking section 211.036, RSMo, because she is no longer a "youth" subject to the statute. Her claims must therefore be litigated under the procedures applicable to civil actions generally, as her own Motion for Rehearing appears to have acknowledged.

The procedural failures outlined above served to deny the Children's Division a full and fair opportunity to be heard on the important issues raised in B.D.'s petition which both prejudiced the Children's Division's ability to defend this action and has produced a deficient record upon which this Court cannot confidently resolve the issues on appeal. Because of the abbreviated proceedings in the juvenile court, a number of factual and legal issues were unaddressed, or not adequately addressed. This includes such fundamental matters as: whether the State has accepted funding or otherwise made itself subject to the provisions of the Federal Act; whether the State could satisfy any obligations under the Federal Act by some mechanism other than returning B.D. to the foster care system (such as by providing her with financial support and other support services); whether the State has provided individuals like B.D. with an administrative mechanism through which to seek the benefits she claims have been wrongfully withheld; whether the federal Department of Health and Human Services has taken any position concerning the State's

11

implementation of the Federal Act and its compliance with its obligations under the Federal Act; and whether the Federal Act creates a private right of action enforceable by individuals like B.D. Compliance with the procedures generally applicable to actions seeking declaratory and injunctive relief will permit the parties and the court to fully explore these issues on remand.

Point I granted.[5]

## Conclusion

Based on the foregoing, we vacate the judgment of the juvenile court and remand for further proceedings consistent with this opinion.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[5] Because we grant Point I, we do not address Point IV.